BRICE T. B. WORTHINGTON for Complainant.
A. RANDALL for Defendant.

CHARLES R. DUVALL
vs.
HENRY MYERS.

} JULY TERM, 1850.

[SPECIFIC EXECUTION OF CONTRACTS—MUTUALITY—PART PERFORMANCE.]

IT is a conceded principle, that the jurisdiction of a court of equity, to decree the specific execution of contracts, is not a matter of right in the parties, and to be demanded *ex debito justitiæ;* but applications invoking this power of the court, are addressed to its sound and reasonable discretion, and are granted or rejected according to the circumstances of each case.

The court must be satisfied that the contract sought to be enforced, is fair and just and reasonable, and equal in all its parts ; and it is now established, that unless there is to be found *in the contract* the essential ingredient of mutuality, a court of equity will not compel its specific execution.

The right to a specific execution of a contract, so far as the question of mutuality is concerned, depends upon whether *the agreement itself* is obligatory upon both parties, so that upon the application of either, against the other, the court would coerce a specifiic performance.

35*

A party not bound by the agreement itself, has no right to call upon this court to enforce performance against the other contracting party, by expressing his willingness, in his bill, to perform his part of the agreement. His right to the aid of the court does not depend upon his subsequent offer to perform the contract on his part, but upon its originally obligatory character.

Where a party relies upon part performance, as a ground for the specific execution of a contract, he must show, by clear evidence, that the acts constituting such part performance are referable exclusively to the identical contract set up in his bill, or they will not avail him.

[The bill was filed on the 20th of May, 1850, and states that the complainant, in the year 1849, sold a body of wood growing on his farm, supposed to contain about 1,000 cords, to one Henry Myers, at the price of 45 cents per cord, and for which said Myers was to pay him at that rate as soon as 100 cords were cut, and so from time to time for every 100 cords, and was not to carry any away until paid for. That complainant gave Myers the privilege of cutting any hoop poles that might be found on the said wood land, and of building houses for his workmen. And said Myers agreed to get out of your orator's way, all the wood that was cut, although not fit for cording, in consideration of which, he was to have all that kind of wood without any further pay, as from said contract signed by Myers will appear, &c. That in pursuance of this contract, Myers proceeded to cut said wood, and up to this time has cut 592 cords, of which he has carried away 80 cords, and burned the residue into coal, of which he has hauled away one pit, and threatens to haul away two more, now nearly ready for that purpose. That Myers has neglected and refused to pay to your orator, said sum of 45 cents a cord, for every 100 cords, and has in fact, only paid $30, and has, when applied to to fulfil his said contract, under various pretexts and promises, evaded the same, and has neglected to haul away the wood not fit for cord wood. That he is advised that he has a lien on said wood for the payment of said purchase money, and a right to the specific performance by said Myers of said contract. The bill then prays for as pecific performance of this contract, and for an injunction restraining said Myers from cutting any more wood, and from hauling what has already been cut, and for further relief. The

contract which was filed as an exhibit with the bill, is recited in the opinion.

The injunction issued as prayed, and on the 28th of May, the defendant, Myers, filed his answer, in which he admits that an agreement was made between the complainant and himself, about the time stated in the bill, and with reference to the body of wood therein described, but denies the complainant's exhibit contains a true exposition of the terms of said agreement, or that the paper so exhibited was ever, as it purports to be, signed by respondent, or by any person authorized by him to sign the same. He also denies that the contract exhibited, is rightly and accurately described in the bill, and insists that even if the terms of said agreement be truly stated in said paper, and his genuine signature be thereto affixed, the contract thus admitted to be the basis of the complaint, is so radically and materially defective, and is so clearly unequal in its operation and effect as to afford the complainant no right to proceed against the respondent in this or any other form of action whatever, either in law or in equity, of which matters this respondent craves the same benefit, and advantage in this answer, that he might, or could, have from any form of averment, or from any mode or form of equity pleading whatever. The answer then proceeds to set forth the agreement which the defendant insists was actually entered into between the parties, essentially differing from that set up in the bill, and states at length the compliance on the part of the defendant with all the terms of this agreement as understood by him, and various misrepresentations and failures to perform, on the part of the complainant. Testimony was taken under a commission, which it is not necessary to state.]

THE CHANCELLOR:

This is not a bill for the specific execution of a parol agreement upon the ground of part performance, which, according to the case of *Moale* vs. *Buchanan et al.*, 11 *Gill & Johns.*, 314, takes the case out of the statute of frauds ; but a bill, which alleging the contract to be in writing, and a failure to perform

on the part of the defendant, prays the court to decree its specific execution. The answer sets up a contract essentially differing from that stated in the bill, which it alleges the defendant did not sign, nor authorize any person to sign for him, and further contends, that even if said paper is genuine, "it is so radically and materially defective, and is so clearly unequal in its operation and effect, as to afford the complainant no right to proceed against this defendant in this, or any other form of action whatever, either at law or in equity," and the defendant craves the benefit of this objection as though regularly and formally pleaded.

Assuming, then, the paper to be genuine, and the assumption is made for the purpose of testing the force of the objection, and without meaning to decide the question of fact, one way or the other, it becomes necessary to consider whether the contract in question is of such a character as to justify the interposition of the extraordinary authority of this court to compel its specific execution. It is a conceded principle, that this branch of the jurisdiction of the court, is not a matter of right in the parties, and to be demanded *ex debito justitiæ*. The application, when this arm of the court is invoked, is addressed to its sound and reasonable discretion, and is granted or rejected according to the circumstances of the case. And as was said by the Court of Appeals in *Geiger et al.* vs. *Green*, decided at December term, 1846, "the court must be satisfied that the contract sought to be enforced is fair and just, and reasonable, and equal in all its parts." The court in the same case, quote with approbation, the doctrine of Lord Redesdale in 1 *Sch. & Lef.*, 18, expressed in these terms, "I have no conception that a court of equity ought to decree a specific performance in a case, except where *both parties had, by the agreement*, a right to compel a specific performance, according to the advantage which they might be supposed to have derived from it, because otherwise it would follow that the court would decree a specific performance where the party called upon to perform, might be in this situation, that if the agreement was disadvantageous to him he would be liable to the performance, and yet,

if advantageous to him, he could not compel a performance."
And after citing other authorities to the same effect, the Court
of Appeals say, as the result of the cases, that, "it is now es-
tablished, that unless there is to be found, *in the contract*, this
essential ingredient of mutuality, a court of equity will not com-
pel its specific execution," and in that very case, the court said
a decree for a specific execution would be refused upon the ap-
plication of the party not bound by the stipulations of the con-
tract, against the opposite party, although the party making ap-
plication had been in the enjoyment of, and been actually work-
ing the ore mine which was the subject of it.   In other words,
as I understand the decision, the right to a specific execution of
a contract, so far as this question of mutuality is concerned, de-
pends upon whether the *agreement itself* is obligatory upon both
parties, so that upon the application of either, against the other,
the court would coerce a specific performance.   If this be the
true exposition of the case referred to, and the doctrine is, that
this court will not compel one party to perform a contract, un-
less by *the contract itself* the power of the court would be used
against the opposite party, if called upon, then it follows that
a party not bound by the agreement itself has no right to call
upon the judicial authority to enforce performance against the
other contracting party, by expressing his willingness in his bill
to perform his part of the agreement.   His right to the aid of
this court does not depend upon his subsequent offer to perform
the contract upon his part, when events may have rendered it
advantageous to do so, but upon its originally obligatory char-
acter, as was said by *Lord Redesdale*, "this would not be
equity, that a party not bound by the agreement itself should be
permitted at his option, and when he finds it to his advantage
to do so, to compel the other party to perform, when, if the ad-
vantage was the other way, he could not himself be coerced to
performance on his part."

The contract in this case, and which this bill seeks to have
specifically executed, is not signed by Duvall, the complainant,
and it seems to me clear, that if disposed to resist, he could not
be compelled to execute it as a written contract.   His name is

not only not signed to the contract, but does *not appear any where* upon the face of the paper, and consequently there is nothing to show who was the other contracting party. The contract is in these words: "I have this day sold to Henry Myers a body of wood, supposing to be 1,000 cords, at 45 cents per cord, which he is to pay me for every 100 cords he cuts at a time, cash, and not to take any away until paid for, and the privilege of some timber to build shantees or houses— he is to have what poles he can get out of it, if any, and to cut every thing clean out of my way, large and small, and all such stuff as he cannot split into cord wood, he is to have, to take out of my way. To which contract I bind myself, and set my hand and seal."

To this paper the name of Henry Myers, the defendant, pur ports to be signed, and there is a memorandum below, saying, "I am to commence the 1st of October, 1849," also, appearing to be signed by him. The paper says, "I have sold"—Who has sold? Who is the party who has contracted with the defendant? The paper does not inform us, and it may as well be any one else, as Duvall. Where then, in the agreement, which he seeks to have specifically executed against the defendant, is the reciprocal obligation on his part? Where the mutuality which the Court of Appeals say, is indispensable to induce a Court of Chancery to extend its extraordinary jurisdiction to enforce the specific performance of contracts? Upon a bill filed by the defendant, Myers, against Duvall, to compel him to execute this contract, might he not say, I am no party to it, my name no where appears in it, and it is not with me you have contracted? And if Myers should say, the contract has been in part performed, the reply would be, that is only evidence of *some contract*, but not of this indentical contract, which you must show by clear evidence to be the very contract of which the acts relied upon, are supposed to be a part performance, or it will not avail you.

My opinion, therefore, is, that consistently with established principles, the plaintiff cannot have a specific execution of this paper, conceding it to be genuine. The bill, therefore, must

be dismissed. But, as from the evidence, it appears the defendant has cut and carried away a portion of wood, for all of which he has not paid, and from other circumstances, it appears to me, he is not entirely free from blame, there will be no decree for costs.

The bill charges, that complainant has a lien on the wood for the payment of the purchase money. This may be so, and no doubt is so. Or rather, there can be no doubt, that if the sale was for cash, no title passed to the purchaser without payment of the purchase money unless the vendor waived the condition of payment. *Powell et al.* vs. *Bradlee,* 9 *Gill & Johns.,* 221.

But then this right of the vendor to require the previous payment of the purchase money, is a right which may be asserted in a court of law, and does not require the aid of this court, as the case last referred to, shows. Therefore, there is not, upon this ground, any reason why the bill should be retained.

CORNELIUS McLEAN for Complainant.
DANIEL M. THOMAS for Defendant.