## THE MARYLAND CONSTRUCTION COMPANY OF BALTIMORE CITY ET AL. *vs.* JOHN KUPER.

*Vendor and Purchaser—Specific Performance—Mutuality of Obligation—Acquisition of a Clear Title by Vendor After Making of Contract—Deeds—Mistake in Description of Lot—Calls.*

The mere fact that a vendor's property is encumbered, or his title defective at the time a contract of sale was made does not prevent his enforcing specific performance of the contract, if the encumbrance has been removed or the title perfected by the time the conveyance is required by the contract to be made.

Upon a bill to enforce specific performance of a contract to purchase real estate from the plaintiff, a corporation, it was alleged by the defendant that the corporation had previously executed a declaration

of trust to the effect that all its property was held for the benefit of a third party, at whose direction conveyances were to be made. This third party united in the deed which was tendered to the defendant. *Held*, that the objection that the contract was lacking in mutuality, and consequently one not proper to be specifically enforced is no defence to the relief asked for, since the deed tendered by plaintiff was executed by all the parties having an interest in the land, and the agent of the plaintiff who effected the sale was also the agent of the third party mentioned in the declaration of trust.

A deed of a lot of ground described it as beginning at the distance of forty-five feet northwest from a certain corner and at the centre of the division wall of the house to be erected on the lot adjoining thereto and to the northwest thereof, and running thence northwesterly. The rest of the description showed that the beginning point was not at the centre of the division wall of the house to be erected on the lot adjoining to the northwest. *Held*, that the beginning was clearly intended to be at the point forty-five feet from the designated corner, and that the error in referring to the division wall did not invalidate the otherwise correct description of the lot.

The second line in the description of a lot of ground in a deed called for it to run 63 feet 3 inches in a certain direction; thence southeasterly parallel with X street 15 feet to the lot secondly described in the deed. This second lot had a depth of only 60 feet to a three-foot alley. *Held*, that the expression, parallel with X street, is to be treated as a call which prevails over courses and distances.

When it clearly appears that the word "northwesterly" in the description of a course of one line of a lot of ground was intended to be "northeasterly" it will be so construed, and such mistake does not invalidate the deed

A contract for the sale of land described it as containing about forty-five feet fronting on one street and about sixteen feet on another. The deed as offered conveyed forty-four feet on the one street and fifteen feet six inches on the other. *Held*, that the deed was a substantial compliance with the contract.

Delay in completing a contract for the sale of land for which the vendor is not responsible is no defence to a bill for specific performance.

Appeal from a decree of the Circuit Court No. 2 of Baltimore City (STOCKBRIDGE, J.), dismissing the bill of complaint.

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Geo. Dobbin Penniman* (with whom was *Herbert.R. Preston* on the brief), for the appellant.

The appellant claims, that at the time of the contract of sale with Kuper, the construction company was in the position of vendor, agreeing to sell its property upon which there was a lien for money due by the vendor and secured by that lien.  It is undoubtedly the settled law of this country and of England, that a vendor who agrees to sell his property need not, at the time he executes the contract of sale, have a clear and unincumbered title to the property he agrees to sell.  It is merely necessary for him to be able at the time agreed upon to give the purchaser a good title, and the fact that at the time the contract of sale was executed there were holders of liens not bound by the contract or parties thereto, cannot be used as a defense by the purchaser, when the vendor has previously procured the release of these liens.  This is especially so when the point of the failure of mutuality is not made until long after the vendor has acquired all of the outstanding unbound interests, and has tendered to the purchaser a good and sufficient deed conveying a clear and unincumbered title.  *Buchanan* v. *Lorman*, 3 Gill, 51 ; *Dorsey* v. *Hobbs*, 10 Md. 417 ; *Foley* v. *Crow*, 37 Md. 51; *Linthicum* v. *Thomas*, 59 Md. 582 ; *Boehn* v. *Wood*, 1 Jacob & Walker, 421 ; *Wynn* v. *Morgan*, 7 Vesey, 203 ; *Haggart* v. *Scott*, 1 Rus. & Mylne, 293; *Salisbury* v. *Hatcher*, 2 Younge & Collyer, 54 ; *Dressel* v. *Jordan*, 104 Mass. 407; *Miller* v. *Cameron*, 1 L. R. A. 654; *Townsend* v. *Goodfellow*, 3 L. R. A., 739; *Dutch City* v. *Mott*, 7 Paige, 77 ; *Willard's Equity*, 290 ; *Dart on Vendors and Purchasers*, 1176.

It is claimed that there is a defect in the title of lot number 3, because the lot is described as beginning at the centre of the division wall of the house to be erected on the lot adjoining thereto on the *northwest*, and running thence northwesterly, binding on Grundy street (now Park avenue), when, as a matter of fact, description should call for the centre wall of the house on the *southeast* side of the lot. This point is trivial and no attention was paid to it by the Court below.  A reference to the deed of ground-rent, shows that

this lot begins on the southwest side of Grundy street at a distance of 45 feet northwest from Preston street. On its third course, the lot binds on the lot secondly described in the deed, and this fact, taken in connection with the statement that the lot begins 45 feet northwesterly from Preston street, makes the location of the lot clear. As will be shown by the authorities to be referred to later, the Court will always adopt that construction of a deed, if there is a conflict between the monuments and the courses and distances, which will enable the other lines of the description to close ; and if the call for the house to be erected on the northwest of the lot is followed, none of the other calls of the deed are satisfied, while if the distance of 45 feet from the corner is taken as correct then all the calls of the deed are satisfied. Attention is called to the fact that the conveyance of the leasehold interest in this property by the deed from Albert Day properly describes the house which adjoins this lot as being on the southeast side. This objection is further cured by reference to the former deed.

The second error in this description set up by the appellee is as follows : In the Geiman deed (No. 9) this lot is described as beginning on the southwest side of Grundy street, 45 feet northwest of Preston street, and running thence northwesterly on Grundy street, 15 feet ; thence southwesterly parallel with Preston street, 63 feet ; thence northeasterly parallel with Grundy street, 15 feet *to the lot secondly described*, and thence northeasterly binding on said lot and parallel with Preston street, etc., to the place of beginning. It will be noticed by an examination of the plat, that a three-foot alley extends in the rear of lots Nos. 1, 2 and 4 of the southeast side of lot No. 3. The defendant claims, therefore, that the call of the third line " 15 feet to the lot secondly above described," brought the third line diagonally over from the end of the second line to the northeast corner of the alley, thereby leaving out of the lot a small triangle, whose base would be the width of the alley and whose apex would be the end of the second line of the description.

Now in the first place to obtain this construction the appellee deliberately rejects that portion of the description of the third line which describes it as running " southeast-erly parallel with Grundy street," claiming that the call for the second lot is paramount, and that the reference to the fact that the line is parallel with Grundy street must be rejected entirely.   In the first place, if the defendant's construction was proper, the third line would be the hypothenuse of a right-angle triangle, and would be more than 15 feet long, while if the line is taken as running parallel with Grundy street, then the lot described is rectangular in shape, and as the lines are described as being parallel, the third line is 15 feet in length as called for in the description.  See *Jones' Law of Real Property and Conveyances*, sec. 383.

It has been said in the case of *Higinbotham* v. *Stoddard*, 72 New York, 94, that the rule as to the call for monuments probably applies with less force when the monuments are artificial than to natural objects. . Applying this rule to the point raised by the appellee it is evident that to permit the artificial monument of the line of the second lot to prevail, would evidently defeat the intention of the parties, that intention clearly being to convey a lot whose sides were parallel.   The course of the third line as running "parallel with Grundy street" the correct distance of 15 feet, when the line is taken as parallel, must clearly be allowed to prevail over the call for the line of the second lot, and if it does prevail then there can be no further criticism of the description.   Undoubtedly the line of the second lot was considered as extending along the entire southeast side of the third lot and across the end of the alley.   If the construction asked for by the appellee is correct then we have placed the parties in a position of retaining in the vendor a triangular piece of ground with a base of three feet and running 15 feet to a point, which could not of course be used for any purpose.

The real answer to this objection is that the contract calls for a lot in fee having a front of 45 feet and an even depth

of about 60 feet,   There is no contract to give the defendant 63 feet and the defendant is not entitled at all under the contract to the 3 feet, to the title of which he objects.   He is only entitled to a 60-foot lot.   The objection, however, is cured by reference, as in the case of the first objection. The description ends : "Which land herein conveyed is more particularly described in the deed from Jeremiah Geiman," etc.   There is no attempt to show that the land is not correctly described in that deed.

The third alleged error in the description is in the lot described as number 5 on the plat, the error occurring in the deed which was filed by the defendant with his testimony. It is in the description of the first lot described in that deed and occurs in the third line.   The first line runs southwesterly along the northwest side of Preston street; the second line runs northwesterly parallel with Grundy street; the third line, which should run northeasterly, is described as running "northwesterly, parallel with Preston street," 15 feet 6 inches, and the fourth line runs southeasterly parallel with Grundy street to the alley, and then continuing the same course along the alley to the beginning.   The error, therefore, consists in the use of the word "northwesterly" instead of the word "northeasterly."   In the first place it will be noticed that the word "parallel" with Preston street is used in describing the line.   The line can not run northwesterly and be parallel, it can run northeasterly and be parallel.   The line cannot run northwesterly and intersect the line, which running from the place of beginning and parallel with Grundy street intersects it, 15 feet 6 inches from its beginning.

It is said in *Devlin on Deeds*, section 1012: "A deed is not void for uncertainty, because there may be errors or an inconsistency in some of the particulars.   If a surveyor by applying the rules of surveying can locate the land, the description is sufficient, and generally the rule may be stated to be that the deed will be sustained if it is possible from the whole description to ascertain and identify the land to be

surveyed. In *Wood* v. *Lorming*, 93 U. S. 514, a similar question was decided. The land was described as "thence south 41" 37' *east* 71.32 chains to the place of beginning." The direction should have been "west" instead of "east," in order that the call for the place of beginning might be sustained, and the Court held that the call would prevail, and that west should be inserted for east. There was also a call in the description for a fence at the end of the seventh course, but as this call would have prevented the other calls from being completed, it was rejected.

In *Montgomery* v. *Carlton*, 56 Texas, 431, it was decided that if by reference the lines and missing call can be supplied, the deed is not void for uncertainty. In this case by reference, the fourth line running northwesterly along the southwest side of said alley 45 feet to the northwest end of said alley, and thence continuing it northwesterly parallel with Grundy street 15 feet, would reach a point where it is evident from the deed the parties intended the third line to end, as the lot only has four lines. By adopting the word "parallel" with Preston street as the controlling word to describe the direction of the third line from the end of the second line, we find that it meets exactly the point which we have obtained by reversing the course of the fourth line. If the word "northwesterly" is allowed to control then the description of the fourth line is rendered absurd, because no line running southeasterly parallel with Grundy street for 15 feet can reach the northwest end of the alley and continue along that alley to the place of beginning. It is submitted that in view of the conflict between the directions "northwesterly" and "parallel with Preston street," one of which must be wrong, the one will be selected which will close up and satisfy all the other calls of the deed.

This objection is also cured by reference, " being the same two lots of ground, which by indenture, etc." In view of the fact that land is constantly conveyed by reference to the previous deed alone, it is evident that when a lot is described as " being the same lot, etc.," that alone

will pass a good title without further description. (1 *War-velle on Vendors*, page 150.)

There were two objections made by Mr. Waters—one that the 45-foot lot was only 44 feet, and the other that the 16-foot lot on Preston street was only 15 feet 6 inches. The contract calls for a lot having a front on Park avenue of *about* 45 feet, and a lot having a front on Preston street of *about* 16 feet. Certainly *about* would cover one foot in forty-five and six inches in a 16-foot lot. If it does not, then the defendant would be entitled to an abatement. The words "about" and "more or less" imply that the actual quantity is a near approximation." *Balto. Per. B. & L. Soc.* v. *Smith*, 54 Md. 203.

*W. George Weld*, for the appellee.

The lack of mutuality appearing sufficient ground of defense to the learned Judge below, he dismissed the bill without formally passing on the questions of title. The Chancellor, in *Duvall* v. *Myers*, 2 Md. Ch. 401, 404, 405, following the Court of Appeals in *Geiger* v. *Green*, 4 Gill. 476, and approving the doctrine of Lord Redesdale, in 1 *Sch. & Lef.* 18, formulated an exposition of the rule of equity bearing on the doctrine of mutuality, of which the exact text has been repeated in decisions of this Court, partly in *Gelston* v. *Sigmund*, 27 Md. 344, and partly in *King* v. *Warfield*, 67 Md. 249–250. *Pomeroy's Equity Jurisprudence*, vol. 3, sec. 1405, note 1, citing *Duvall* v. *Myers, supra*, and other Maryland cases, concludes the subject of mutuality thus : "It may be said, however, as a general proposition, that where a contract was intended to bind *both* parties and for any reason one of them is not bound, he cannot compel performance by the other. *Putman* v. *Porter*, 100 Mass. 337."

The objections raised to the titles arise : *First.* From the description of the third lot in deed from William H. Geiman and wife to The Maryland Construction Company, dated February 28, 1891.

Assuming the lot intended to be the one marked 3 on the herewith diagram, the beginning is given " at the centre of the division wall of the house to be erected on the northwest," and running thence northwesterly binding on Grundy street 15 feet. This would lie, as the dotted line shows from B, entirely outside of the intended lot. This is the first objection. The second objection to the same description is that after reaching a point 63 feet southwest of Grundy street it purports to run fifteen feet to the lot secondly described. But the second lot was only 60 feet deep, and to gratify this call would make an oblique line to C, to which both Mr. Jones and Mr. Waters objected.

Next, because in the chain of title of the lot marked 5 is a deed dated 7th December, 1867, from Maulsby to Shafer, in which the third line is erroneously made to run northwesterly instead of northeasterly.

Mr. Waters also objected to a shortage. The agreement had specified a leasehold interest in the lot, west corner of Preston street and Park avenue, being sixteen feet front with a depth of about sixty feet to a three-foot alley, a fee-simple lot adjoining the above on the north having a front on Park avenue of about 45 feet with an even depth of about sixty feet to the alley above mentioned, also a leasehold interest in a lot adjoining on the west having a front on Preston street of about sixteen feet with a depth of about sixty feet more or less. Mr. Waters : " The title to the 45-foot lot was made up of the titles to a 14-foot lot and two lots of 15 feet each, making a lot of 44 feet in the whole, and the lot on Preston street was 15 feet 6 inches instead of 16 feet."

However one or other of these four objections may be sought to be explained away by the appellants, it is matter of daily knowledge and experience in conveyancing that a considerable number of such objections affecting the same property renders it unmarketable, and the judgment of the conveyancers who examined the titles is the best guide to

determine whether such titles would pass freely and fairly or not.   See *Flurcan* v. *Thornhill*, 2 Wm. Bl, 1078 ; *Bain* v. *Fothergill*, L. R. 6 Eq. 59, and L. R., 7 H. L. 159.

Nine months elapsed from the making of the agreement of sale before the filing of the bill, a hearing and decision was reached a year and eight months later, and, as Mr. Kuper testifies, the repeal of the mechanics' lien law for materials has put an entirely different aspect on such a deal by a builder.   His answer alleges and he testifies that it would be a hard bargain, and that the property was not worth the price except for the immediate use he had for it. The contract and the situation of the parties must be such that the remedy of specific performance will not be harsh or oppressive.   3 *Pomeroy Equity Jurisprudence*, 449, note 1. " The hardship may result from the situation of the parties unconnected with the terms of the contract or with the circumstances of its negotiation and execution, that is. from external facts or events or circumstances which control or affect the situation of the defendant."

The appellant in the Court below cited *Balto. Land Soc.* v. *Smith*, 54 Md. 187, to show that " about 45 feet " in the contract would be gratified by a conveyance of 44 feet, and " about 16 feet " by 15 feet 6 inches.   *Smith's case* was a case of acreage property.   The suit was not for specific performance, but a suit at law for breach of contract.    In this case the Court held, 54 Md. 204, that a contract to sell " about 65 acres " was an agreement to sell land containing 65 acres, with no other qualifications than such slight variation as might be found in its actual measurement.    In the case at bar a 44-foot lot is an entirely different thing from a 45-foot lot.   For example, three houses of 15 feet each could be put upon one, while houses of 14 feet 8 inches each, or one of 15 feet and two of 14 each would be far less marketable.   Moreover, this is a suit for specific performance wherein *certainty* is a requisite.   Either it is a contract for a 45-foot lot and a 16-foot lot, in which case it is not gratified, and each purchaser had an absolute right to

reject it, *Rayner* v. *Wilson, etc.*, 43 Md. 444, or it is too indefinite to support specific performance. One of the earliest lessons in conveyancing is, that a line running "about" so many feet is no line at all, unless it is made certain by a call. No survey can be made of it and no title passed by it.

BOYD, J., delivered the opinion of the Court.

On the 18th day of January, 1897, the Maryland Construction Company, through its agent, J. D. McCubbin, Jr., and John Kuper entered into an agreement for the sale by the former to the latter of some lots on Park avenue (formerly called Grundy street) and one on Preston street, in the city of Baltimore. Kuper paid $25.00 on account of the purchase money, which was to be returned in the event that the title should be found to be not marketable. Thirty days was allowed for the examination of the title, upon the completion of which and the execution of a deed for the property the balance of the purchase money was to be paid. Kuper having declined to accept the deed and pay the purchase money, a bill was filed by the appellants for the specific performance of the contract, which, after hearing, was dismissed by the decree of the Court below. From that decree this appeal was taken. Several objections to the title of the lots are urged by the appellee, and it is also contended that there was no mutuality of contract between the parties. We will first consider the latter question.

1. It appears from a petition of the receivers of the Baltimore and Ohio Railroad Company, filed in the Circuit Court of the United States for the District of Maryland, a copy of which is by agreement of counsel made a part of this record, that the Maryland Construction Company undertook the construction of the Baltimore Belt Railroad, which connected the main line of the Baltimore and Ohio Company at Camden station with its Philadelphia branch, near Bay View. The Baltimore and Ohio held all the stock of the construction company and made large advances to it.

The construction company acquired a number of parcels of land which it did not convey to the Belt Railroad, and which were not within the right of way of that company, including the lots now in controversy. The United States Court, after hearing the counsel representing various interests affected by the petition, passed a decree authorizing the receivers to issue certificates of indebtedness to an amount not exceeding $956,000.00, to be dated December 1, 1896, payable three years thereafter, and redeemable on the first of June, 1897, or on any interest day thereafter, the proceeds of which were to be applied as therein directed. The decree provided that the receivers, as a condition precedent to the issuance of the certificates, should require the construction company to execute to them an agreement or declaration of trust, acknowledging and agreeing that it did and would hold all its property for the benefit and protection of said receivers, and that it would in no case sell or in any way dispose of any of its property without their consent in writing, and that it would upon the request of the receivers sell, lease, convey, transfer, assign or dispose of in any way the whole or any part of said property and assets as the receivers might direct—they being authorized to receive and receipt for all moneys derived from such sales. On the 27th day of November, 1896, the construction company executed the declaration of trust in accordance with that decree, which was duly recorded. It is by reason of it that the appellee contends there was no mutuality o contract, as the agreement for the sale to him was not signed by the receivers, but only by the construction company.

The appellee has referred to the cases of *Geiger* v. *Green*, 4 Gill, 476 ; *Duvall* v. *Myers*, 2 Md. Ch. 401 ; *Gelston* v. *Sigmund*, 27 Md. 344, and *King* v. *Warfield*, 67 Md. 246, in support of his contention. In *Geiger* v. *Green*, the Court, after referring to a number of authorities, including the doctrine as stated by LORD REDESDALE in *Lawrenson* v. *Butler*, 1 Schoale and Lefroy's Reports, 18, said : " It is now established that unless there is to found *in the contract* this

essential ingredient of mutuality, a Court of Equity will not compel its specific execution." In *Duvall* v. *Myers* the Chancellor said : " The right to a specific execution of a contract, so far as this question of mutuality is concerned, depends upon whether the *agreement itself* is obligatory upon both parties, so that upon the application of either, against the other, the Court would coerce a specific performance." And in the other cases referred to similar expressions are used. But, without in any wise questioning the doctrine as established by them, do they interfere with the right of the construction company to maintain this bill ? By the very terms of this agreement that company has obligated itself to sell and convey the property and the appellee to purchase and pay for it. The uncontradicted evidence shows that Mr. McCubbin was the agent of the company and was authorized to make the sale. There is nothing on the face of the agreement to show lack of mutuality, and " it is obligatory upon both parties." The doctrine announced in the above cases therefore does not prevent the construction company from maintaining its bill for specific performance.

It is said, however, that it was not in a position to convey the property by reason of the declaration of trust, and as the receivers were not parties to the agreement there was the lack of mutuality complained of. But the title to the property was not conveyed to the receivers. The company still held the title, and the declaration of trust only prevented it from conveying it, without the consent in writing of the receivers. It, in reality, was no greater incumbrance on the property than a mortgage, for when the indebtedness intended to be thereby secured was paid it had the unquestioned right to be relieved from the effects of its provisions. It was a declaration that it held the property for the security of the debt and was very similar to a mortgage with a provision in it that the mortgagee should have the use and control over the property until the debt was paid. The testimony shows that Mr. McCubbin was also agent of the

receivers, and that he was authorized by them to make the agreement.  It is true that he does not say whether he had, in advance, that authority in writing, but if that was deemed material the appellee could have asked him the question, but the receivers did unite in the deed that was tendered the appellee, and there is no suggestion in the record that there was ever any question about their willingness to do so.  The deed executed by the construction company and the receivers, who thereby gave their consent in writing, if they had not done so before, was tendered to the appellee, and he refused it, giving no other reason for doing so than he thought when he agreed to make the purchase that the two ground-rents were redeemable, and afterwards ascertained they were not, but there was nothing in the contract on that subject.  There was no objection *then* made on the ground of lack of mutuality in the contract, or for any defect in the title.

While it is true that a vendor must be ready and able to convey a marketable title to the purchaser, it is not necessary that he possess such a title at the time the contract is entered into—provided he shows that he made the contract in good faith and was able to convey it when called upon by his agreement to do so.  The great weight of authority is that he is only required to be able to convey it by the time the decree is entered, if time is not of the essence of the contract, and he acts in good faith.  *Hepburn* v. *Auld*, 5 Cranch, 262; *Hepburn* v. *Dunlop*, 1 Wheat, 179; *Mason* v. *Caldwell*, 10 Ill. 196;  *Dresel* v. *Jordan*, 104 Mass. 407; *Luckett* v. *Williamson*, 37 Mo. 395; *Jenkins* v. *Fahey*, 73 N, Y. 355;  *Oakey* v. *Cook*, 41 N. J, Eq. 350;  *Miller* v. *Cameron*, 45 N. J. Eq. 95;   *Guild* v. *R. R. Company*, 57 Kan. 70 (s. c. 33 L. R. A. 77);   *Reformed Dutch Church*, v. *Mott*, 7 Paige, 77, and many other cases cited in 22 *Ency. of Law*, 960.   So far as the cases in this State reflect upon the question they are in accord with that view.  In *Buchanan* v. *Lorman*, 3 Gill 77, it was said: " The ability of the vendor to convey should exist when his duty by the contract

arises to convey, or at the time of a decree for a conveyance, where time is not of the essence of the contract." That is repeated in *Dorsey* v. *Hobbs*, 10 Md. 417, and again in *Foley* v. *Crow*, 37 Md. 59.    In *Linthicum* v. *Thomas*, 59 Md. 574, the parties had agreed to exchange properties free from incumbrances, except those specified, and Thomas executed a deed, which was without his authority put on record, but Linthicum's property was not clear and he had not acquired the legal title to part of it.  Thomas proceeded in equity to have the deed annulled and the agreement declared void.   The Court said that Linthicum's title when the bill was filed " was so manifestly defective, that a Court of Equity would not for a moment have considered it such as a purchaser would be bound to accept, in a case of specific performance.   *   *   *   As against these bills he could not take the ground that *he could have his title ready at the time of the decree, as is allowed the complainant in a bill for specific performance.*"

The authorities are therefore ample to establish the doctrine that the mere fact that the vendor's property is encumbered, or his title is defective, at the time the contract of sale is made, will not prevent his enforcing the contract in equity, if he has removed the incumbrance and perfected the title by the time he is required by his contract to convey it, and, generally, when he has acted in good faith relief will be granted him, if he is ready to furnish a clear title at the time of the decree, provided the delay has not prejudiced the purchaser and time is not of the essence of the contract.    If this were not so, an owner of land who has incumbrances upon it might pay them off for the purpose of giving the purchaser a clear title and then not be able to enforce the contract of purchase, or he might be subjected to heavy costs in order to have his title cleared and then not be able to require the purchaser to perform his part of the contract.   In this case there is no evidence of any difficulty in the way of the construction company giving a clear title (so far as this declaration of trust is concerned),

as the receivers had consented to the sale and actually joined in the deed before any objection now urged had been made, so far as known to the company.

2. The first objection to the title is based on two alleged errors in the description of lot No. 3, on the plat filed.

They arise in the deed from William H. Geiman to the construction company. One of them is that the beginning of the lot is described to be " on the southwest side of Grundy street at the distance of forty-five feet northwesterly from the corner formed by the intersection of the southwest side of Grundy street with the northwest side of Preston street, and *at the centre of the division wall of the house to be erected on the lot adjoining thereto, to the northwest thereof.*" The expression "to the northwest thereof" is what causes the difficulty. If that means a house *to be erected* on an adjoin-

ing lot which is to the northwest of the lot being described, the beginning, instead of being forty-five feet from the corner of Preston and Grundy streets, would be sixty feet, and starting from that point a lot would be described which is entirely beyond the one intended to be conveyed.     The beginning cannot be at forty-five feet from the corner of those streets and in a division wall of a house to be erected on the lot northwest of No. 3.     There is, therefore, manifestly an error and we must examine the whole description to ascertain, if possible, where the error is and whether it is such a defect as to prevent the property from being marketable. In the first place, the beginning at forty-five feet from the corner of the two streets was a call that could at the time be definitely and accurately ascertained, as the streets were in existence, but the house was " *to be erected,*" and hence is not described as there at the time.  If it never was erected it would be impossible to ever start at the centre of the division wall, and hence the beginning as first described is more accurate than the other and should for that reason be followed.     But the rest of the description conclusively demonstrates that the beginning as first described is the correct one, for the lines of the deed run " northwesterly binding on Grundy street fifteen feet, thence southwesterly parallel with Preston street sixty-three feet ; thence southeasterly parallel with Grundy street fifteen feet to the lot secondly above described, and *thence northeasterly binding on said lot and parallel with Preston street, and through the centre of said division wall* sixty-three feet to the place of the beginning." It therefore not only shows that the second line of this lot is intended to be only fifteen feet from No. 2, but the last line calls to run not only with that lot, but " *through the centre of said division wall to the beginning*—thus conclusively showing that *the division wall* spoken of, in describing the beginning, was the one along the line of lot No. 2. Then again, the last line could not run with lot No. 2 and the division wall, and reach the beginning if the beginning was at the northwest corner of lot No. 3.   It is therefore

perfectly clear that the beginning was intended to be at the point forty-five feet from the corner of those streets, which point is also the end of the first line of lot No. 2, as will be seen from the description.

The second error in this deed is in the third line, which is " thence southeasterly parallel with Grundy street fifteen feet to the lot secondly above described." This lot is supposed to have a depth of sixty-three feet, while No. 2 is only sixty feet—a three-foot alley being taken off—hence it is said that the call *"to the lot secondly above described,"* which is No. 2, requires the line to go to lot No. 2, which would leave a triangular piece of No. 3 out of the convey-ance. This objection might be answered by reference to the contract, in which lots Nos. 1, 2 and 3 are described together, as a fee-simple lot adjoining the one on the corner of the two streets, " having a front on Park avenue of about forty-five feet with an even depth of *about sixty feet to the alley* above mentioned." The agreement therefore does not require the company to convey a lot of greater depth than from Park avenue to the alley, and if the appel-lee's construction of this deed is correct the company offered to convey him more than he is really entitled to. That certainly would be no objection to the bill for a specific performance. But is his construction correct? The general rule is that a call to an artificial or natural object prevails over courses and distances when they conflict, and it is for the reason that a call is supposed to be more accu-rate than courses and distances. But there are no courses given to the lines of this deed, they only give their general direction. This third line is said to run "southeasterly," and that alone might be gratified either by running to the corner of No. 2, or in any other southeasterly direction. But it calls to run *"parallel with* Grundy street " and it cannot so run if it must go to the corner of No. 2. It is not as if it had said, for example, south sixty degrees east, for in such a description a mistake is easily made, but when it calls to run parallel with a street only sixty-three feet

away there is not much room for a mistake, as the street
is there.   The deed shows that the two short lines of all
the lots are intended to be parallel to each other and the
two long lines to be also parallel.   If, as appears by the
plat filed, Grundy street and Preston street are at right
angles to each other, all three of the lots in this deed were
intended to be parallelograms, and the construction con-
tended for by the appellee would not only be in opposition
to the manifest intention of the parties in that respect, but
it would leave out of the conveyance a little triangle, three
feet wide at the widest point, and would shorten the dis-
tance of the last line from sixty-three to sixty feet.   As
one call must be abandoned—either to run parallel with
Grundy street or to go to lot No. 2—and both cannot be
gratified, we must take that which the whole deed shows
was evidently the intention of the parties.   As was said in
*Thomas* v. *Godfrey*, 3 G. & J. 151, "Where there are two
inconsistent expressions or calls, both of which cannot be
gratified, but either of which, standing alone, would be im-
perative, that which appears to be the most certain and
most consonant to the intention apparent upon the face of
the patent, should, in the construction of it, be preferred,
for the same reason that calls are preferred to courses and
distances, because more certain.   Or, if there is anything
on the face of the patent to explain or qualify one of them,
so as to show that the other was intended to be the gov-
erning or imperative call, it should be so treated."   And
in *Kelso* v. *Stigar*, 75 Md. 392, the Court, through CHIEF
JUDGE ALVEY, said: " Now, according to  *  *  *  well-
established principles of location in this State, as well as else-
where, where there is manifest error in the grant in regard
to descriptions of objects, courses or distances, the Court
will inquire into the probabilities of mistake, as to the ob-
jects or courses called for, and look to the consequences
which would result from rejecting the one or the other.
*  *  *   An error of description in a survey, says this
Court in *Wilson* v. *Inloes*, 6 Gill, 121, 165, 166, adop ted

in a patent or grant, manifestly founded in mistake or false-hood, is insufficient to control other calls and expressions. inconsistent therewith, and where the assumption of mistake in a single description, harmonizes all the rest of the grant, the Court will make such assumption." Following those authorities and treating the expression " parallel with Grundy street " as *a call* (as it is) and not as a mere course, it is as imperative as the call to lot No. 2, and as it " appears to be the most certain and most consonant to the intention appearing upon the face of the deed " it should be preferred and obeyed.

3. The other objection to the title is the error in the third line of lot No. 5. It calls to run " *northwesterly* parallel with Preston street." A line cannot be run " *north-westerly parallel with Preston street,*" as that street runs. *northeasterly* and *southwesterly*. As the fourth and fifth lines are " thence southeasterly parallel with Grundy street. fifteen feet to the northwest end of said alley, and thence still southeasterly bounding on it and with the use in common thereof forty-five feet to the place of beginning," a. *northwesterly* line from the end of the second line would. not close the survey. It is therefore perfectly manifest that " northwesterly," as used in this line, was a mistake and that it should be " northeasterly." The case of *Kelso* v. *Stigar*, where it was said that " north " should be read " south " is conclusive of this point.

4. Another objection made is that the contract called for the sale of " about forty-five feet " in the property on Park avenue, and " about sixteen feet " in the lot fronting on Preston street, while there are only forty-four feet on the former street and fifteen feet six inches on the latter. The use of the word " about " indicates that the parties. only contracted for a number of feet that would be a near approximation to those mentioned, and negatives the conclusion that entire precision was intended. The difference is not sufficient to justify the Court in disturbing the contract. *Baltimore Per. B. &. L. Society* v. *Smith*, 54 Md. 187 ; 1 *Ency. of Law*, (2nd Ed.) 196.

It was suggested at the argument that considerable time had elapsed since the contract was made, that the property was not worth the price agreed to be paid, except for the immediate use the appellee had for it, and that the change in the mechanics' lien law, as applicable to Baltimore city, had put an entirely different aspect on such a deal by a builder.   But there is absolutely nothing in the record to show that the company was in any way responsible for the delay, and what we have already said of the title sufficiently indicates our views as to the reasonableness of those objections.   Indeed, as we have seen, none of those objections were made to the representatives of the company when he called on the appellee for the performance of the contract and tendered the deed.   There have been so many cases in this Court on the subject of specific performance, that it would be useless to attempt to cite many of them, but if it be conceded that there was any doubt as to the title to any part of the property, the case of *Levy* v. *Iroquois Co.*, 80 Md. 300 is applicable.   It was there said, "it is not every doubt or suggestion, or even threat of contest that will be sufficient" to defeat a demand for specific performance of a contract to buy, but the doubt must be a reasonable one; "otherwise an assailing purchaser might in every case raise or make such an objection."

The decree will be reversed and the cause remanded in order that a decree may be passed requiring the appellee to perform his contract.

> *Decree reversed and cause reman-*
> *ded, costs to be paid by the appel-*
> *lee.*

(Decided January 10th, 1900).