## CHARLES F. HAMMER *vs.* WALTER L. WESTPHAL.

*Vendor and vendee: small deficiency of frontage; abatement of price; variation of surveys; specific performance; marketable title; sales under execution; mere doubt or threat of contest.*

A vendor need not have a marketable title at the time of the agreement; he is only required to be in a position to convey such a title by the time the decree for specific performance is entered, provided that time is not of the essence of the contract, and the vendor appears to have acted in good faith.

p. 18

The purchaser at an execution sale acquires only such title as the debtor had at the time of the rendition of the judgment.

p. 18

Sales under a decree in equity transfer only the right and title of the parties to the suit.                    p. 19

But the transmission of titles through such proceedings does not render them unmarketable, merely because of the possibility, however remote, that there may be interests which the judgment or decree does not purport to bind.          p. 19

A purchaser who objects to the title proposed to be conveyed should be able to present some reasonable ground for his apprehension.                    p. 19

It is not every doubt, suggestion or even threat of contest that will be sufficient to sustain a vendee's objection to the title proposed to be conveyed.                    p. 20

The vendee, defendant to a bill for specific performance, objected on the ground that the title was unmarketable; there were no allegations made or evidence adduced to raise any

suspicions that there may have been liens superior to the judgment under which the sheriff's sales had been effected (and under which the vendor claimed), and the objection was merely that there was no absolute certainty as to the non-existence of such interests. *Held,* that those doubts did not render the title unmarketable.                    p. 20.

Where the respective surveyors employed by a vendor and vendee differed as to the frontage of the property to be conveyed, it was *held,* that a deficiency of 10½ inches out of a total of 243 feet, called for by the agreement, was not a sufficient defense to a bill for specific performance, where the vendor abated the purchase price proportionately.          p. 21

*Decided February 13th, 1913.*

Appeal from the Circuit Court of Baltimore City (BOND, J.).

The facts are stated in the opinion of the Court.

The Cause was argued before BOYD, C. J., BRISCOE, BURKE, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*John H. Grill* (with whom was *Charles A. Briscoe* on the brief), for the appellant.

*M. N. Packard* (with whom was *Herman T. W. Heimiller* on the brief), for the appellee.

URNER, J., delivered the opinion of the Court.

By an agreement in writing dated October 20th, 1911, the appellee contracted to purchase from the appellant in fee simple a lot of ground in Baltimore City described as lying on the east side of Collins avenue, formerly Irving avenue, 155 feet 10 inches south from the Old Frederick road, fronting on Collins avenue 243 feet with an even depth of 140

feet to the west side of Norris alley. It was provided that upon payment of the purchase price of $5,062.50 a deed should be executed by the vendor conveying to the vendee a good and merchantable title. At the time of the execution of the agreement the appellant was the owner of a 99 year leasehold, renewable forever, subject to an annual rent of one cent, in a lot described in the lease as beginning 155 feet, *6* inches south of the Old Frederick road, and as having a frontage of *233* feet on Irving avenue, and a depth of 140 feet to Norris alley. There was thus a deficiency of 10 feet in the frontage of the lot which the appellant contracted to sell as compared with that which he then held, and his estate was not equivalent to the fee simple title he had agreed to convey. The discrepancy of four inches between the descriptions in the agreement and the lease as to the location of the northern line of the lot was evidently an inadvertence. The lease under which the appellant acquired his lot was from Edward B. O'Keefe and wife and was executed August 31, 1891. It recited that the lot demised was a portion of the property described in a deed to O'Keefe and wife from John T. Mason, R., and wife, dated August 1st of the same year. This deed conveyed to the grantee all of the lot of ground lying between the Old Frederick road on the north and a line parallel with and 200 feet distant from McHenry street on the south. The description contained in the deed to O'Keefe indicated a frontage of 360 feet, more or less, on Irving avenue, but by actual measurement the frontage between the northern and southern boundaries mentioned in the deed is about 400 feet, and, as the calls prevail over distances, the grantee in the deed, of course, acquired the whole of the ground included within the limits thus designated. The northern portion of the lot, fronting 155 feet, 10 inches on Irving avenue and lying immediately south of the Old Frederick road, having been otherwise disposed of, there remained in the ownership of O'Keefe at the time of his lease to the appellant a lot having a frontage of about 244 feet.

But as the lease purported to demise a lot fronting only *233* feet south of the southern line of the separated portion, there was left to the lessor a strip of ground about 11 feet wide immediately south of the lot leased to the appellant.

In order to perfect his title to the land contracted to be sold, the appellant acquired by sheriff's deeds, in consummation of sales in execution of a judgment against O'Keefe, the interest and estate of the latter in all the land included within the original outlines previously described. Deeds were also obtained from Mrs. O'Keefe assigning and conveying to the appellant all her inchoate dower estate in the property. The effect of these conveyances was to merge the leasehold and reversionary interests in the lot described in the lease and to vest in the appellant a fee simple title not only to that lot but also to the adjacent strip on the south which the lease did not include. There were two sub-leasehold interests which the appellant had created in parts of the land originally demised, but these were extinguished by reconveyance. The appellee declined to accept the title notwithstanding these efforts to make it conform to the requirements of the agreement, and the present suit was brought to enforce its specific performance.

There is no dispute as to the right of the plaintiff to a decree if he has effectually supplied the deficiencies in his title existing at the time of the contract of sale. The rule is that the vendor need not have a marketable title at the time of the agreement, but is only required to be in a position to convey such a title by the time the decree is entered, provided that, as here, time is not of the essence of the contract and the vendor appears to have acted in good faith. *Md. Construction Co.* v. *Kuper,* 90 Md. 542; *North Ave. Land Co.* v. *Balto. City,* 102 Md. 484.

The objections urged against the title are, first, that the interests acquired by the appellant under the sheriff's deeds to which we have referred do not provide him with the good and marketable title contemplated by the agreement, and, secondly, that the surveys and evidence in the case show that

the location and extent of the ground in question are not susceptible of ascertainment with the requisite accuracy.

In presenting the first of the objections stated the appellee does not contend that a sheriff's deed is not an effective means of transferring title, but he insists that as the only interest transferred is that which the judgment debtor may have had at the time the judgment was rendered, and as this would be subordinate to any outstanding, though unrecorded, liens on the property which he may have previously created, there is no sufficient assurance from such a deed that the title will not be disturbed. It is not suggested that the appellee has any reason to suppose that there are in fact any pre-existing liens which may possibly prejudice the title. His only criticism is that if there should be any such liens, the sheriff's deed would not prevent their enforcement.

The sheriff's sales were made under executions issued upon a judgment entered in 1902, and after the lapse of ten years there is not the slightest indication of the existence of any interest by which the title offered the appellee can be impaired. It is undoubtedly the rule that a purchaser at an execution sale acquires only such title as the debtor had at the time of the rendition of the judgment. *Valentine* v. *Seiss,* 79 Md. 190; *Dyson* v. *Simmons,* 48 Md. 215. It is also an established principle that sales under decrees in equity transfer only the right and title of the parties to the suit. *Paper Bag Co.* v. *Carr,* 116 Md. 544; *Scarlett* v. *Robinson,* 112 Md. 208. But it certainly does not follow that the transmission of titles through such proceedings renders them unmarketable merely because of the possibility, however remote, that there may be interests which the judgment or decree does not purport to bind.

A purchaser who objects to the title proposed to be conveyed should be able to present some reasonable ground for his apprehension. It has been held that while he has a right "to demand a title which shall enable him not only to hold his land, but to hold it in peace; and one so clear of doubt as will enable him to sell the property for its fair market

value," yet, "it is not every doubt or suggestion or even threat or contest that will be sufficient," but the inquiry in each case is whether the facts raise a *reasonable* doubt as to the title. *Levy* v. *Iroquois Co.*, 80 Md. 304; *Md. Construction Co.* v. *Kuper, supra.* In this case no allegation has been made or evidence adduced to raise any suspicion that there may have been liens superior to the judgment under which the sheriff's sales were effected, and the objection is merely that there is no absolute certainty as to the non-existence of such interests. In our opinion this is not a sufficient reason for holding the title unmarketable.

The other objection is based upon some divergence and supposed uncertainty in the results obtained by the surveyors employed by the respective parties to locate the outlines of the property involved in this suit. According to the plat prepared by Mr. Disney, who surveyed the ground at the instance of the plaintiff, the lot has a frontage on Irving avenue of 244½ feet, while in the plat submitted by Mr. Martenet, who made a survey for the defendant, the frontage given is 242 feet and 1½ inches. The surveyors did not agree as to the exact location of the southern limit of the old Frederick road, which was one of the calls in the deeds under which the plaintiff obtained title, but the difference in the results at which they arrived, so far as the dimensions and outlines of the plaintiff's lot are concerned, do not seem to us sufficiently serious to prevent specific performance. If Mr. Martenet's survey is correct, the frontage of plaintiff's lot is 10½ inches less than the 243 feet he agreed to convey; while if Mr. Disney's is to be accepted, the frontage is 1½ feet in excess of that required by the contract. If the average of the results of the two surveys be taken, there is still enough to meet the demands of the purchase. The plaintiff has offered to make an abatement in the purchase price proportionate to the 10½ inch deficiency in the frontage indicated by Mr. Martenet's survey, and this would seem to relieve the case of any difficulty on account of this possible and slight discrepancy. *Foley* v. *Crow,* 37 Md. 51; *Carmody*

v. *Brooks.* 40 Md. 244; *Connaughton* v. *Bernard*, 84 Md. 587; 36 *Cyc.* 738. It was insisted, however, that the testimony of both surveyors indicated considerable difficulty and doubt in reference to the location of the southern boundary of the Old Frederick road, and that as the northern line of the plaintiff's lot is dependent upon that boundary it is necessarily involved in the same uncertainty. The testimony, as we understand it, does not lead to this conclusion. The surveyors expressed confidence in the accuracy of their respective plats and fully explained the method and theory of the surveys. They were both entirely competent for the work, and if their slight disagreement as to the location of the plaintiff's northern line were to render him incapable of conveying a good title to his lot under the present contract, he might be very seriously embarrassed in making any other sale of the property. There is no reason to doubt that the defendant may safely rely at least upon the survey made at his own instance, and since the very small deficiency which that discloses will be met by the abatement proposed by the plaintiff, we see no ground upon which to discharge the parties from the performance of the agreement of sale. As we are unable to concur in the dismissal of the bill by the learned Court below, the decree will be reversed and the cause remanded to the end that the agreement may be specifically enforced.

> *Decree reversed with costs to the appellant and cause remanded for further proceedings in accordance with the opinion.*