## Louisville & Nashville Railroad Company, et al. v. Fuson.

(Decided June 10, 1924.)

### Appeal from Bell Circuit Court.

1. Vendor and Purchaser—Sale of Tract of Land for Right of Way Controlled by Same Rule as Applies to Sales of Land in General, as Regards Acreage.—Where landowner would not sell right of way for railroad, and insisted on selling his entire farm, transaction is controlled by same rule that applies to sales of land in general as to deficiency in acreage.

2. Specific Performance—Not Granted Vendor where there is Great Deficiency in Land.—A vendor may not have specific performance of contract to purchase land with deduction for deficiency upon tender of a deed conveying 126 acres, where contract provided for conveyance of 250 acres "more or less," even though vendee railroad contracted to purchase solely to get a right of way across land.

WOODWARD & WARFIELD for appellants.

JAMES M. GILBERT and E. F. BAKER for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

On October 14, 1905, Joseph Fuson and his wife executed and delivered to J. B. Harlan, trustee, a title bond by which they agreed, in consideration of $500.00 cash and $3,500.00 thereafter to be paid, to convey to said Harlan, trustee, a tract of land on Greasy creek in Bell county, bounded on the north by the lands of Ford and Murray, on the east by the lands of Evans and Golden,

on the south by the lands of John Fuson and on the west by the lands of Philip Fuson, "same being 250 acres more or less." At that time Harlan was acting as trustee for the Pine Mountain Railroad Company, a subsidiary of the Louisville & Nashville Railroad Company. During the following year this suit was brought for specific performance of the contract. The railroad companies resisted specific performance, and asked a rescission of the contract on the ground of a gross deficiency in acreage and defective title. On final hearing specific performance was decreed, and the railroad companies have appealed.

The facts are these: Both the Cumberland Railroad Company and the Pine Mountain Railroad Company were endeavoring to get a right of way through appellee's farm, and J. B. Harlan, as the representative of the Pine Mountain Railroad Company, approached him for that purpose. Appellee declined to sell the right of way, but offered to sell his farm. Appellee claims that he never represented the land as containing any number of acres, and declined to sell any specific number of acres. He also had the title bond changed so as to insert the words, "more or less," after the figures "250." He further says that he pointed out the boundary of his land to Harlan and sold it by the boundary, and that his land was greatly damaged by the railroad company. Harlan says that appellee represented the land as containing 250 acres, and refused to sell anything less than the entire tract. At the time of the purchase he did not know the lines of the land, but appellee undertook to show the particular boundaries by pointing out certain points on the mountains where his land joined other land.

In the year 1909 appellee filed an amended petition and tendered a deed dated February 19, 1908, in which the area conveyed is recited as "being about 200 acres." Later on appellants filed an amended answer in which they alleged that the deed tendered contained about 94 acres of land to which appellee had no title whatever, and that his title to the remainder was defective. In the year 1913 appellee filed a third amended petition tendering a deed dated May 29, 1913, which described the land as containing 126 acres.

In support of the decree the argument is as follows: The Cumberland Railroad Company and the Pine Mountain Railroad Company were engaged in constructing

their lines to a common point, and each desired to obtain a right of way through appellee's land. Therefore, when Harlan, as the agent of the Pine Mountain Company, came to deal with appellee, his sole purpose was to acquire a right of way. That being true, the situation was one where the number of acres was wholly immaterial, and the parties intended to take their chances on the quantity. The weak point in this argument is that appellee would not sell a right of way, but sold his entire farm. Therefore, the case is controlled by the same rule that applies to sales of land in general. The land was described in the title bond as "being 250 acres more or less." The deed last tendered contained only 126 acres. The words, "more or less," relieve only from the necessity of exactness, and not from gross deficiency. Boggs v. Bush, 137 Ky. 95, 122 S. W. 220; Wilson v. Morris, 192 Ky. 469, 233 S. W. 1049. Here there was a deficiency of practically fifty per cent. The question is, may a vendor have specific performance upon the tender of a deed conveying only one-half of the land contracted to be conveyed? It has long been the rule that where the shortage in the quantity of land contracted to be conveyed is inconsiderable and not material to the purchasers' enjoyment of that which may be conveyed, specific performance will be decreed with a ratable deduction of the purchase price by way of compensation. Such was the ruling in Keepers v. Yocum, 84 Kan. 554, 114 Pac. 1063, Ann. Cas. 1912A, 748, where there was a deficiency of 2½ acres out of 114 acres contracted for; and in Hammer v. Westphal, 120 Md. 15, 87 Atl. 488, where there was a deficiency of 10½ inches in frontage of 243 feet contracted for; and in Morgan v. Brast, 34 W. Va. 332, 12 S. E. 710, where there was a deficiency of 20 acres out of nearly 300 acres contracted for. An extreme case is In re Fawcett, L. R. 42 Ch. Div. 150, where the property contracted for was stated to contain 1,372 square yards. There was a condition that errors in the description should not annul the sale, but that if they were pointed out before completion compensation should be allowed for them. It appeared that prior to the date of the contract the vendor had sold 339 square yards, so that there were only 1,033 square yards remaining. The 339 square yards formed a strip running from the front to the rear, and separated from the adjoining property by a wall. The court, in holding that this was a case for specific performance with compensation, said: "It is said that the purchaser does

not get nearly the quantity of land bargained for, and that the discrepancy is so great as to take the case out of the condition as to compensation. The particulars contain a clear and correct description of what is sold, followed by a misdescription as to quantity. It appears to me that the misdescription does not affect the substance of what the petitioner intended to purchase. The property was separated by a wall from the portions which Fawcett had sold. I do not say that such a difference of quantity as what exists here could not in any case alter the substance of what a purchaser intended to buy, but here, what he intended to buy was a well-defined and fenced off property, consisting of a house, yard and outbuilding.'' However, we know of no case involving a deficiency of 50 per cent where the court decreed specific performance with compensation. On the contrary, in the case of Kenner v. Bitely, 45 Fed. 133, there was a contract to convey a farm described as containing 900 acres and agreed to contain at least 850 acres. It was also represented that there were 200 acres of first bottom land. The survey showed that the farm contained only 635 acres, a deficiency of 215 acres, and that 134 acres of this deficiency were considered to be by far the most valuable part of the land. It was held that the deficiency in quantity and quality of the land sold was such that specific performance with compensation for the deficiency should be denied. We therefore conclude that specific performance in this case should not have been decreed.

However, we do not look with favor upon the claim of appellants to recover the cash payment of $500.00. It appears that after the execution of the title bond, appellants took possession of the land, destroyed the fencing, cut valuable timber and fruit trees, made excavations in the valuable part of the land and then abandoned the land. On the whole, we conclude that the $500.00 was no more than reasonable compensation for the damage done, and that substantial justice requires that appellee be permitted to retain this sum.

Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.