CHARLES T. MARSHALL

*v.*

L. H. KEACH.

*Opinion filed April 18, 1907.*

1. CORPORATIONS—*when corporation de facto exists.* A corporation *de facto* exists where the law authorizes such corporation and where the company has made an honest attempt to organize under such law and has proceeded to transact business as a corporation, even though it has not filed for record its final certificate of incorporation.

2. SAME—*a party purchasing stock must exact special guaranty to cover legality of organization.* One who contracts to purchase stock in a corporation is protected by an implied warranty that the stock is genuine and that the vendor is the owner thereof and authorized to transfer title, but if he desires the further assurance that the corporation is a corporation *de jure* he must exact a special guaranty to that effect.

3. SPECIFIC PERFORMANCE—*when a contract does not guarantee legal existence of corporation.* The term "(inc.)," inserted after the corporate name of the proposed vendor in a contract for the exchange of a farm for shares of stock in the corporation, is not a guaranty that the corporation is a corporation *de jure,* and the fact that it has not filed for record the certificate of final incorporation does not excuse the owner of the farm from complying with the terms of the contract, there being no fraud or deception in the transaction and no judgments or debts against the corporation or the owner of the stock.

4. SAME—*when specific performance must be decreed.* If a contract is in writing, is certain in its terms and based upon valuable consideration, is fair and just in all its provisions, understandingly and fairly entered into and capable of being enforced without hardship to either party, a court of equity is bound to decree specific performance thereof, since its discretion in the matter of specific performance is not arbitrary.

5. SAME—*grounds for refusing to carry out a contract may be waived.* Grounds justifying the refusal of a party to carry out his contract for the exchange of properties, such as the matter of time being of the essence of the contract, want of mutuality, etc., may be waived by the acts of such party pending the negotiations for the carrying out of the contract.

APPEAL from the Circuit Court of Clark county; the Hon. E. R. E. KIMBROUGH, Judge, presiding.

On February 14, 1906, a contract was entered into between appellant and appellee whereby the latter agreed to trade his farm of one hundred and sixty acres in Clark county, Illinois, for one hundred shares of stock of the Marshall Warehouse Company and $8800 additional, making the total consideration for the farm $20,000. Appellant owned all but two shares of stock of the said warehouse company, which was located in Charleston, Coles county, Illinois. The contract contained, among others, the following provisions: Appellant agrees "to deliver to second party (appellee) the entire one hundred shares of the capital stock of the Marshall Warehouse Company (inc.) at a consideration of $11,200, first party to have ten days in which to secure the acceptance of a loan of $8800, at five per cent per annum, from three to five years on the one hundred and sixty acres hereby traded for, and in case of failure to secure said loan the second party has right until April 1, 1906, to secure said loan and first party to pay one per cent commission for said loan, and in case neither party can secure said loan then · this agreement is null and void; said $8800 to be paid said second party and first party to assume said mortgage of $8800." In consideration of the agreements on the part of first party, second party agrees to convey, by warranty deed, the farm in question at a consideration of $20,000, "subject to oil and gas lease to Ohio Oil Company, which second party shall use best efforts to have released on record, and in case of failure to get released, agreement to be void at option of first party without any damage or cost on either party, provided if one hundred and forty acres of said one hundred and sixty acres is released then agreement to stand. Second party to furnish abstract title in him, subject to above oil lease and also subject to mortgage of $3800, which second party is to pay off and release. Second party to make

said deed also subject to farm lease to Sim White; each party to pay the taxes for 1905 on property now owned by him. Earnings on warehouse to belong to first party until March 1, 1906, afterward to second party. First party is to be responsible for all goods and merchandise now in warehouse until checked over to second party, $500 forfeit to be put up by each party with Lucien Wheatly. All deeds and papers to be passed and this negotiation closed as soon as terms of this agreement can be complied with. Time is declared to be of the essence of this agreement."

The parties proceeded to act under the agreement. There was some delay in procuring the loan mentioned, but neither party made any point of it at the time. Appellant finally procured a loan of $7000 (instead of $8800, as provided,) from the Northwestern Mutual Life Insurance Company, and appellee executed a mortgage to said company on said farm, and accepted the $7000, in the form of a draft, as part payment of the additional consideration of $8800 provided for, the payment of the remaining $1800 being held in abeyance until the final settlement of the trade.

Appellant's warehouse was located on land belonging to the Big Four railroad and by that company leased to him, the last lease being dated July 5, 1901, and running for one year from January 1, 1901, since which time the same rental had been paid and the same conditions obtaining as during the term of the written lease. The lease contained provisions that it might be terminated on sixty days' notice, and there were certain other reservations of rights to the lessor or licensor.

When the trade was about to be closed, the parties met on May 28, 1906, in the office of the attorney for appellee, in Charleston, to examine the papers. After such examination the attorney reported that they were not regular, in that the Marshall Warehouse Company had not filed with the recorder of deeds of the county its certificate of incorporation. Appellant stated that he thought he had filed this

paper for record, and, accompanied by appellee, went to the recorder's office but found no record of incorporation. On their return with this report appellee's counsel suggested that he could draw up 'certain papers that would fix it up. Appellant requested that this be done, and appellee seemed to acquiesce in the request,—at least he made no objection, although present. Appellee's counsel thereupon drew a deed to be executed by appellant and his wife and wrote out a resolution to be adopted by the warehouse company authorizing the sale of its stock. Appellant and his wife executed this deed, which was also signed by himself as president of the company and his son as secretary. He also procured the adoption by the stockholders of the company of a resolution drawn by appellee's counsel authorizing the assignment of the certificates of stock to appellee. He also obtained, at the request of appellee's counsel, a certificate of an abstract company that there were no judgments against appellant or the warehouse company. After these papers had all been duly executed in accordance with the request of appellee's attorney, and on the same day that the parties had gathered in reference to closing the trade, appellant came with these papers to the office of appellee's attorney and presented them to appellee in the presence of the attorney. Then for the first time appellee expressed to appellant some doubt about consummating the trade, and suggested that he would let the appellant know positively the next morning what he would do.

At the time of these conferences at the office of appellee's attorney it seems that the contract in question had not been examined by the latter and he did not know its contents. Appellee testified that he did not suggest that the papers drawn by the attorney should be drawn and that he gave his attorney no authority to make the suggestions he did. His attorney testified to the same effect, stating that these suggestions were made by himself before he had seen the contract in question and without any authority from appellee

Appellee was present at the time the suggestions were made and raised no objection. The same day that all these conferences took place, appellant, appellee and another party went to the warehouse of appellant and checked over the grain and other property in the building. The next morning appellant tendered the deed, the stock and a certified check for $1800, but appellee said he did not know anything about checks and refused to accept the offer. Appellant then obtained $1800 in gold, and again tendered the deed, the stock and this $1800 in gold, together with the other papers that had been prepared at the request of appellee's attorney. Appellee refused to accept the tender, saying that he did not consider that he was obligated to proceed with the trade. Up to this time he had made no objection that the trade was not consummated within the time set out in the original contract, nor as to the mortgage on the farm being $7000 instead of the $8800 provided in the contract. So far as can be gathered from the evidence, the only objection that he raised was the fact that the certificate of incorporation had not been recorded in the recorder's office. Appellant paid the commission for the loan of the $7000 from the Northwestern Life Insurance Company. Appellee testified that he intended to pay this, but on inquiry, after the suit was started, he found that appellant had paid it.

On May 30, 1906, appellant filed a bill in the circuit court of Clark county asking for specific performance of the contract. Appellee answered, denying that there was such a corporation as the Marshall Warehouse Company and averring that the pretended certificates of stock were valueless and void. On hearing before the circuit court the bill was dismissed, and an appeal was thereupon prayed to this court.

F. K. DUNN, and J. H. MARSHALL, for appellant:

There is no implied warranty by the vendor of the capital stock of a corporation that the corporation is one *de jure*.

*Harter* v. *Eltzroth,* 111 Ind. 159; 26 Am. & Eng. Ency. of Law, (2d ed.) 858-860.

The seller of choses in action or negotiable securities impliedly warrants that they belong to him and that they are not forgeries. Beyond this there is no liability where there is no express stipulation. The rule of *caveat emptor* applies to such purchases. *Bank* v. *Drew,* 191 Ill. 186; *Higgins* v. *Bank,* 193 id. 394; *Robinson* v. *McNeill,* 51 id. 225; *Tyler* v. *Bailey,* 71 id. 34; *Strong* v. *Leoffler,* 85 id. 73; *Hinkley* v. *Bank,* 216 id. 559.

A *de facto* corporation is a reality. It has an actual and substantial legal existence. It is, as the term implies, a corporation. *Society Perun* v. *Cleveland,* 43 Ohio St. 481; 8 Am. & Eng. Ency. of Law, (2d ed.) 748.

Where there is an honest attempt of corporators to organize a corporation under the laws of this State, and all the necessary steps to perfect its organization have been taken except that the final certificate thereof is not recorded in the office of the recorder of deeds of the proper county, and the directors, upon the issue of such certificate, elected the necessary officers and proceeded to the transaction of business as a corporate body, these facts will establish a corporation *de facto.* *Bushnell* v. *Ice Machine Co.* 138 Ill. 67; *Hudson* v. *Green Hill Seminary,* 113 id. 618; *Railroad Co.* v. *Railroad Co.* 75 id. 113.

It is no defense to an action on a contract for the purchase of stock that the company was insolvent or is being wound up, or is only proven to be a *de facto* corporation. 26 Am. & Eng. Ency. of Law, (2d ed.) 859, 860.

Such *de facto* corporation, except where its organization is attacked by the State in a direct proceeding for that purpose, has the same rights and liabilities as a corporation strictly *de jure.* It has the same standing in the courts, the same right to acquire and transfer real and personal property, and is not in any way subject to collateral attack. The highest prerogatives of government, the rights of eminent

domain and of taxation, may be, and constantly are, exercised by such corporations *de facto,* and their right cannot even be questioned. *Ward* v. *Railroad Co.* 119 Ill. 287; *Railroad Co.* v. *Railroad Co.* 75 id. 113; *Railroad Co.* v. *Railway Co.* 158 id. 390; *People* v. *Newberry,* 87 id. 41; *Trumbo* v. *People,* 75 id. 561; *Blake* v. *People,* 109 id. 504; *Osborn* v. *People,* 103 id. 224.

Relief by way of specific performance is granted as a matter of right and not of favor. The discretion of the court is not arbitrary, and the granting of specific performance of a contract to convey land, which is valid and· unobjectionable, is as much a matter of course in a court of equity as a judgment for damages at law. *McClure* v. *Otrich,* 118 Ill. 320; *Evans* v. *Gerry,* 174 id. 595; *Allen* v. *Woodruff,* 96 id. 11.

A stipulation that time shall be of the essence of the contract is waived where both parties ignore it and proceed to carry out the contract after the lapse of the stipulated time. *Watson* v. *White,* 152 Ill. 364.

H. A. NEAL, for appellee:

The right to a specific performance is not absolute, like the right to recover damages in the action at law. Whether the court will compel a party to do the particular thing he has agreed to do is a matter of sound judicial discretion, depending upon the circumstances of the particular case. Although a contract may be legal and enforceable, it must be perfectly fair, equal and just, and such as a court of equity will commend, or it will not be specifically enforced. *Phelps* v. *Railroad Co.* 63 Ill. 468; *Canal Comrs.* v. *Sanitary District,* 191 id. 326; *Espert* v. *Wilson,* 190 id. 629; *Railway Co.* v. *East St. Louis,* 182 id. 438.

Where there has been no legal incorporation the members are individually liable, as partners, for all the debts of the organization. Cook on Stock and Stockholders, (1st ed.) par. 233; Page on Private Corp. par. 162.

Where time is of the essence of the contract such a provision cannot be dispensed with, and if one party claims a waiver he must show such waiver by clear and conclusive evidence. *Phelps* v. *Railroad Co.* 63 Ill. 468; *Heckard* v. *Sayre,* 34 id. 142; *Kemp* v. *Humphrey,* 13 id. 573; *Stow* v. *Russell,* 36 id. 18.

A contract to be specifically enforced by the court must be mutual,—that is to say, such that it might, at the time it was entered into, have been enforced by either of the parties against the other. Whenever, therefore, the contract is incapable of being enforced against one party that party is equally incapable of enforcing it against the other. *Gage* v. *Cummings,* 209 Ill. 120; *Cowan* v. *Curran,* 216 id. 598; *Tryce* v. *Dittus,* 199 id. 189.

Mr. JUSTICE CARTER delivered the opinion of the court:

The main question in this case is whether, under the terms of the contract, appellant, directly or by implication, warranted that the Marshall Warehouse Company was a corporation *de jure.* Appellant contends that under the contract in question he gave no direct or implied warranty that the capital stock that he was selling was that of a corporation *de jure;* that the seller of negotiable securities of this kind only warrants that they belong to him and that they are not forgeries. He also contends that the Marshall Warehouse Company was a *de facto* corporation, and that the appellee is not in any way injured by the failure to have the certificate of incorporation recorded.

This court has held that to create a *de facto* corporation there must be a law under which said corporation may be created, together with user under the law. (*American Trust Co.* v. *Minnesota and Northwestern Railroad Co.* 157 Ill. 641.) We have also held that where there was an honest attempt of the corporators to organize a corporation under the laws of the State, and all the necessary steps had been

taken except that the final certificate had not been recorded by the recorder of deeds, and that thereafter the necessary officers had been elected, who had proceeded to the transaction of business as a corporate body, these facts would establish a corporation *de facto*. (*Bushnell* v. *Consolidated Ice Machine Co.* 138 Ill. 67.) A corporation is a *de facto* one where the law authorizes such corporation and where the company has made an effort to organize under that law and is transacting business in the corporate name. (1 Cook on Stock and Stockholders and Corporation Law,—3d ed. —sec. 234; 8 Am. & Eng. Ency. of Law,—2d ed.—p. 747.) The Marshall Warehouse Company had obtained a certificate from the Secretary of State, in due form, on May 8, 1900. From that time it had done business as an incorporated company, carrying on a general storage business, mostly as to broom corn. It issued warehouse certificates signed by the president and secretary, and procured and used a seal. Its officers received from the Secretary of State the customary notice as to the affidavit concerning trusts, in September, and the customary notice as to the annual report to be filed, in February, each year after the certificate was issued, which documents were apparently filled out and returned in due course, with the required fee. Its officers also made out, and sent in the name of the company, a statement, as required by law, to the State Board of Equalization. So far as the record discloses, everything had been done by the company that the law required from the time the certificate had been received by the Secretary of State except the recording of the certificate, as required by section 4 of chapter 32. (Hurd's Stat. 1905, p. 497.) Manifestly, from this record the Marshall Warehouse Company was a *de facto* corporation.

Did the letters "inc.," placed in parenthesis in the contract in question, warrant that the stock was that of a corporation *de jure,* or was such warranty implied from the rest of the contract? The exact question here raised has

never been decided by this court, although 'the powers and responsibilities of a *de facto* corporation, as well as the liabilities of the officers of such corporation, have frequently been discussed. A *de facto* corporation, as long as it exists, is a reality. It has a substantial legal existence. (*Society* v. *Cleveland,* 43 Ohio St. 481; 8 Am. & Eng. Ency. of Law,—2d ed.—p. 748, and cases there cited.) This court has stated that it is the settled law that neither the eligibility of the directors of a *de facto* corporation nor the rightfulness of its existence could be inquired into collaterally. (*Cincinnati, Lafayette and Chicago Railroad Co.* v. *Danville and Vincennes Railway Co.* 75 Ill. 113, and cases there cited; see, also, *Chicago Telephone Co.* v. *Northwestern Telephone Co.* 199 Ill. 324; *People* v. *Pederson,* 220 id. 554.) It has been held by this court that proof of the existence of a corporation *de facto* is sufficient on a plea of *nul tiel* corporation. (*Cozzens* v. *Chicago Brick Co.* 166 Ill. 213; *Mitchell* v. *Deeds,* 49 id. 416.) The introduction of the charter of a corporation, with the proof of the exercise under it of the franchises and powers thereby granted, is sufficient to establish the existence of a corporation *de facto.* (*St. Louis, Alton and Terre Haute Railroad Co.* v. *Belleville City Railway Co.* 158 Ill. 390.) The directors and officers of the *de facto* corporation are not relieved from the liability imposed by section 18 of said chapter 32, on corporations. "There must be a corporation *de jure* in order to escape that liability." (*Butler Paper Co.* v. *Cleveland,* 220 Ill. 128; *Loverin* v. *McLaughlin,* 161 id. 417.) It was held in *Gade* v. *Forest Glen Brick and Tile Co.* 165 Ill. 367, that the capital stock of a corporation might be reduced before recording the final certificate in the recorder's office, and that creditors, after notice of the reduction of such capital stock, would be confined to the reduced capital, as they did not become creditors until after the certificate was recorded and the notice of the reduction published as required by law. This court has discussed various phases and duties of *de facto* corporations in

*Curtis* v. *Tracy,* 169 Ill. 233; *McCormick* v. *Market Nat. Bank,* 162 id. 100; *Edwards* v. *Armour Packing Co.* 190 id. 467; *Gunderson* v. *Illinois Trust and Savings Bank,* 199 id. 422; *Gay* v. *Kohlsaat,* 223 id. 260; *Hudson* v. *Green Hill Seminary,* 113 id. 618.

The Supreme Court of Indiana, in the case of *Herter* v. *Eltzroth,* 111 Ind. 159, had before it the identical question here under discussion, and there said that there was no implied warranty on the part of the vendor of certificates of stock that the corporation issuing them was a corporation *de jure;* that if the corporation was a *de facto* one that was sufficient to relieve the vendor from liability as to any implied warranty as to the existence of the corporation. To the same effect is 26 Am. & Eng. Ency. of Law,—2d ed.— p. 258. The Indiana court cited in support of its holding, *Otis* v. *Cullum,* 92 U. S. 447, where, in a case involving the sale of municipal bonds issued without statutory authority, in passing on the question of implied warranty the United States Supreme Court held: "The seller is liable *ex delicto* for bad faith, and *ex contractu* there is an implied warranty on his part that they belong to him and that they are not forgeries. Where there is no express stipulation there is no liability beyond this." The Supreme Court of Indiana, after this quotation from the *Otis case, supra,* said: "A less liberal rule, clearly, cannot be applied to the sale and transfer of certificates of stock." This court in *Hinkley* v. *Champaign Nat. Bank,* 216 Ill. 559, held that the assignment of a judgment carries an implied warranty that the judgment is genuine, that it was entered in due form of law, but that there is no implied warranty that the judgment was impregnable to attack, and we there quoted with approval from the *Otis case, supra,* the following: "If the buyer desires special protection he must take a guaranty. He can dictate its terms and refuse to buy unless it is given. If not taken he cannot occupy the vantage ground upon which it would have placed him." In *Higgins* v. *Illinois Trust and Savings*

*Bank,* 193 Ill. 394, we held that the vendor of stock in a corporation impliedly warranted that the same was genuine and that he was then the owner thereof and authorized to transfer title, and that if the assignee desires further protection he must exact a special guaranty.

Appellee insists that under the decision of *Loverin* v. *McLaughlin, supra,* and the cases there cited, the members or stockholders of a corporation which has not filed its certificate of incorporation, as required by section 4 of said chapter 32, are liable, as partners, for its acts or contracts, and the directors, officers and agents acting in its name render themselves personally liable, and that therefore the appellee ought not to be compelled to specifically perform this contract, as he himself would thereby become personally liable for the debts of the Marshall Warehouse Company; that the right to a specific performance is not an absolute one, but the contract must be perfectly fair, equal and just, and such as will commend itself to a court of equity; that this contract does not come within this doctrine. While the application for specific performance is addressed to the sound legal discretion of the court and will not be decreed as a matter of course, yet the discretion of the court in such cases must be exercised according to settled principles of equity, and not arbitrarily. "A court of equity will, as a matter of course, grant the specific performance of a contract for the conveyance of land where it is valid at law, fairly entered into and unobjectionable in any of its features which address themselves to the judicial discretion of the chancellor. In such case a court of equity is equally bound with a court of law to grant the appropriate relief when properly applied to for that purpose." (*Fowler* v. *Fowler,* 204 Ill. 82.) The sound judicial discretion,—not arbitrary or capricious but controlled by established principles of equity,—must be exercised upon a consideration of all the circumstances of each case. Where the contract is in writing, certain in its terms and for a valuable consideration, fair and

just in all its provisions, capable of being enforced without hardship to either party, it is as much a matter of course for a court of equity to decree its specific performance as for a court of law to award damages for its breach. (3 Pomeroy's Eq. Jur. sec. 1404.)

The stipulation in the contract that time should be of the essence was waived by the parties, and cannot be urged, under the facts presented in the record, as to the enforcement of this contract. (*Watson* v. *White*, 152 Ill. 364; *Kissack* v. *Bourke*, 224 id. 352.) Under the authority of this last case we think that the provisions of the contract as to the oil lease did not render it such an optional contract that it cannot be enforced. The lack of mutuality which is urged now by appellee was clearly waived by his conduct during the negotiations. (*Gibson* v. *Brown*, 214 Ill. 330.) There is nothing in the contract or pleadings that would raise the question as to the leasehold interest on the railroad right of way, and it therefore cannot be considered. There is no claim that there was fraud or deception of any kind on the part of appellant in the making of the contract in question or that the property of the Marshall Warehouse Company was not worth the consideration placed upon it in the contract. No judgments or debts existed against the corporation or Marshall himself. Under the holdings of this court as to *de facto* corporations, it is clear that the failure to file for record a copy of the certificate of organization within two years from the date of the license, when the corporation had proceeded, under the certificate, to transact business, as shown by this record, would not be deemed a forfeiture of the license. Under such a state of facts a copy of the certificate could still be filed for record with the recorder of the county and the corporation would then be fully organized *de jure*.

We are of the opinion, under the authorities, that by this contract appellant did not warrant that the certificates of stock were issued by a *de jure* corporation. It is apparent

from the record in this case that the transaction was fair and open in all particulars, and that appellee has no valid objection, on the merits, to the carrying out of the contract. As has been repeatedly said by this and other courts, if he desired the warranty he is now contending for he should have inserted it in the contract before it was executed. Appellant's offer to carry out the contract was in accordance with its terms as modified and sanctioned by both parties.

The decree of the circuit court will therefore be reversed and the cause remanded for further proceedings in accordance with this opinion.    *Reversed and remanded.*