## CROWLEY v. CROWLEY et al.

(Court of Appeals of District of Columbia. Submitted March 5, 1926. Decided June 1, 1926.)

No. 4381.

**1. Specific performance ⊛32(1).**

Right to enforce specific performance of contract depends on mutuality of obligation; hence person against whom contract cannot be enforced cannot enforce it.

**2. Specific performance ⊛49(1)—Agreement without consideration by purchaser of land to await seller's perfection of title held insufficient to support seller's action for specific performance.**

Agreement without consideration by purchaser of property at a judicial sale, who was guaranteed good record title, to await perfection of title by trustees making sale, held not a new agreement, or an extension of the original agreement, sufficient to support an action for specific performance by the trustees, who did not perfect title until nearly two years after sale and after purchaser had withdrawn offer.

**3. Specific performance ⊛32(2)—Performance by party to contract of conditions which could not have been specifically enforced against him does not entitle him to enforce specific performance against other party.**

Where a contract, when executed, is not specifically enforceable against one of parties, that party, by performing the conditions that could not have been specifically enforced, does not put himself in a position to demand specific performance of the other party.

**4. Specific performance ⊛100—Trustees making judicial sale, but not perfecting their title until purchaser had withdrawn offer to await perfection of title, held not entitled to enforce specific performance of purchaser's contract.**

Where purchaser of property at judicial sale, who was guaranteed good record title, on inability of trustees making sale to give good title, agreed to await perfection of title by them, but before title was perfected withdrew her offer to wait, because the delay had resulted in loss to purchaser of opportunity to lease adjoining property, held, trustees, not perfecting title until nearly two years after the sale was made, could not then enforce specific performance.

**5. Judicial sales ⊛31(1).**

A judicial sale is made pendente lite, with the court as vendor, until there is a judicial confirmation.

**6. Judicial sales ⊛31(2)—Rule that intervention of disappointing conditions is no defense against prompt confirmation of judicial sales does not apply, where title guaranteed to be good proves defective.**

Judicial sale of land is not rendered unenforceable by mere lapse of sufficient time to procure a confirmation thereof; hence fact that purchaser may have paid excessive price, or that disappointing conditions may have intervened, is no defense against prompt confirmation. But such rule does not apply, where title which was guaranteed to be good proves defective.

Appeal from the Supreme Court of the District of Columbia.

Suit by Robert F. Crowley and others, trustees, against Margaret A. Crowley, for specific performance of contract to purchase land. From a decree for plaintiffs, defendant appeals. Reversed and remanded.

J. Y. Reeves and D. T. Wright, both of Washington, D. C., for appellant.

C. C. James and W. W. Millan, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, ROBB, and VAN ORSDEL, Associate Justices, and BARBER, Judge of the United States Court of Customs Appeals.

VAN ORSDEL, Associate Justice. Appellant, defendant below, bid in the property here in question at public auction on May 28, 1923. One of the terms of sale was, "Good record title or no sale." The auction was conducted by order of court through appellees, plaintiffs below, as trustees, and the present action was brought to enforce specific performance of the alleged contract of purchase by defendant.

The property consisted of lots fronting on each of two intersecting streets, with a

vacant corner lot between. The vacant lot is situated at the corner of P street and Wisconsin avenue, and the lots in question surround it, facing west on Wisconsin avenue and north on P street.

The case was tried on the bill, rule to show cause, and answer to the rule to show cause. It is averred in the answer, and therefore admitted, that at the time of the sale the corner vacant lot was owned by the Washington Railway & Electric Company; that plaintiff arranged with the railway company to lease a large portion of the corner lot, with the intention of so remodeling the building on the property purchased as to open store windows and doors on the side walls facing on the vacant lot.

Immediately following the sale, a title company was instructed to report on the condition of the title. No report was made until October 20, 1923, when it was found that the title was defective. The arrangement with the railway company still being open, defendant informed plaintiffs that she would await the perfection by them of the title. Plaintiffs consumed five months in an effort to negotiate the perfection of the title, but their efforts proved futile. Plaintiffs then filed in court a petition, alleging that the title had been found defective and asking leave to perfect the same. To this petition defendant filed an answer, in which she stated that, the proposition with the railway company being still open, she was willing to complete the purchase. The court accordingly authorized the trustees to bring proceedings to quiet the title.

Shortly thereafter defendant received notice from the railway company withdrawing their proposition to lease her the vacant lot, and stating that the greater part of the property, including all that portion embraced within the arrangement with defendant, had been sold to other parties for the purpose of establishing thereon a gasoline filling station. Defendant immediately notified plaintiffs of the situation occasioned by the action of the railway company, and declared her inability to carry out the contract of purchase at the price originally bid. Thereafter, on June 25, 1924, plaintiffs filed a bill to quiet the title, and on January 28, 1925, nearly two years after the sale, notified defendant, through her attorney, of the perfection of the title and their readiness to convey the property to her. Through her attorney, she then positively refused to carry out the agreement for the reasons theretofore given. From a decree for specific performance, defendant appealed.

From the terms of the decree, all that can be considered is the petition, the rule to show cause, and the answer. A large amount of extraneous matter has been improperly brought into the record, which will be disregarded. From the averments of the answer, it is clear that defendant extended the time for fulfilling the agreement without consideration, and only upon the condition that she would be able to carry out her arrangement with the railway company. The right of specific performance depends upon the relation of the parties with respect to the contract at the time of the sale. It is clear that plaintiffs at that time were not in position to deliver a good title, and consequently could not have been compelled to specifically perform their agreement.

[1] It is elementary that the right to enforce specific performance depends upon mutuality of obligation. "A contract to be specifically enforced by the court must be mutual—that is to say, such that it 'might, at the time it was entered into, have been enforced by either of the parties against the other of them. Whenever, therefore, whether from personal incapacity to contract, or the nature of the contract, or any other cause, the contract is incapable of being enforced against one party, that party is equally incapable of enforcing it against the other, though its execution in the latter way might in itself be free from the difficulty attending its execution in the former." Fry on Specific Performance (3d Ed.) § 440.

[2, 3] Neither did the option to the trustees to perfect the title form such a new agreement, or extension of the original agreement, as will support an action for specific performance against the defendant. This extension was without consideration, and was definitely withdrawn before plaintiffs filed their bill to quiet the title, and more than a year before they filed their bill in the present case. The offer or option which defendant gave to plaintiffs to go forward and perfect their title was such an offer as was incapable of acceptance until the plaintiffs were in position to fulfill their agreement. They are not in position now to claim acceptance through their conduct in perfecting the title, since long before this was accomplished the offer had been withdrawn. "Where a contract, when executed, is not specifically enforceable against one of the parties, he cannot, by subsequent performance of those conditions that could not be specifically enforced, put himself in a position to demand specific enforcement against the other party." Norris v. Fox et al. (C. C.) 45 F. 406, quoted with approval in Pantages v. Grauman, 191 F. 317, 325, 112 C. C. A. 61.

[4] Coming to the more serious question of the equities involved; we think the plaintiffs

are totally without standing. The delay of almost two years in putting themselves in position to perform the contract resulted in a change of conditions which greatly depreciated the value of the property for the purpose desired by defendant, and rendered it practically useless for her purpose, and where a situation of that kind intervenes, through the delay of the party asking specific performance, a court of equity in the exercise of its discretion will, in good conscience, deny relief. "To stay the arm of a court of equity from enforcing a contract, it is by no means necessary to prove that it is invalid; from time to time immemorial it has been the recognized duty of such courts to exercise a discretion, to refuse their aid in the enforcement of unconscionable, oppressive, or iniquitous contracts, and to turn the party claiming the benefit of such contract over to a court of law." Pope Manufacturing Co. v. Gormully, 144 U. S. 224, 236, 12 S. Ct. 632, 637 (36 L. Ed. 414).

[5, 6] Plaintiffs' attempt to avail themselves of the distinction between a suit to enforce the specific performance of a contract growing out of a judicial sale and of a contract between individuals is without avail in this case. Unlike a contract between individuals, a judicial sale is made pendente lite, with the court as vendor, until there is a judicial confirmation of the sale. The contract growing out of a judicial sale is not, therefore, rendered unenforceable by the lapse of merely sufficient time to procure a confirmation of the sale; hence the fact that a party may have purchased the property at a price in excess of its value, or disappointing conditions may have intervened, would be no defense against prompt confirmation. But this rule has no application, where there is a defect in title, and the purchase was made upon a guaranty of "good record title or no sale."

The decree is reversed, with costs, and the cause is remanded for further proceedings not inconsistent with this opinion.