## ROBB v. CRAWFORD et al.

(Court of Appeals of District of Columbia. Submitted October 13, 1926. Decided December 6, 1926.)

### No. 4443.

1. **Specific performance** ⬸8—Specific performance of contract to exchange realty is within judicial discretion.

Whether specific performance of contract to exchange parcels of real estate will be decreed is a question addressed to sound discretion of court.

2. **Specific performance** ⬸8—Court's discretion in matter of decreeing specific performance is not arbitrary or capricious.

Court's discretion in the matter of decreeing specific performance of contract for exchange of realty is not arbitrary nor capricious, but controlled by established doctrines and settled principles of equity.

3. **Exchange of property** ⬸7—Defendant, by basing refusal to perform contract for exchange of realty on particular ground, thereby waived right to assert other grounds.

Defendant, by basing refusal to carry out contract for exchange of real estate on ground that he believed third party was real owner, and that he would not pay such party a commission for making a deal on his own prop—

erty, thereby waived right to assert alleged lack of mutuality of remedy, or failure to clear incumbrance as ground for his refusal.

**4. Specific performance ⬤⟷32(3)—Contract for exchange of realty, executed by one joint owner with authority of the other, held not lacking in mutuality of remedy.**

Where contract to exchange real estate was made by part owner of one of parcels with authority of his joint owner, there was no lack of mutuality of remedy, barring right to specific performance.

**5. Specific performance ⬤⟷32(2)—Lack of mutuality when contract was executed does not bar specific performance, if supplied on part of plaintiff before suit.**

As affecting right to specific performance of contract to exchange realty, mutuality of remedy need not exist when contract was executed, if supplied on the part of plaintiff during the life of the contract and prior to the filing of suit.

**6. Specific performance ⬤⟷95—Where defendant waived tender of deed, failure of plaintiff to clear incumbrance before trial did not preclude specific performance.**

Where defendant in suit for specific performance of contract to exchange realty had expressly waived a tender of the deed, failure of plaintiff to perfect release of trust prior to trial did not preclude relief.

**7. Specific performance ⬤⟷73—No one can be compelled to serve another against his will.**

It is settled law that no one can be compelled by a court of equity to serve another against his will.

Appeal from the Supreme Court of the District of Columbia.

Suit for specific performance by Henry J. Robb against Francis A. Crawford and others. From a decree dismissing his bill, plaintiff appeals. Reversed and remanded.

D. T. Wright and Philip Ershler, both of Washington, D. C., for appellant.

L. A. Widmayer, H. H. O'Bear, J. V. Morgan, H. W. Wheatley, and Edmund Campbell, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a decree in the Supreme Court of the District of Columbia, at the close of the evidence for the plaintiff, appellant here, dismissing a bill for specific performance of an agreement to exchange two parcels of real estate in this District. The contract was in writing, and signed by the plaintiff and the defendant Crawford. The other defendants were made parties because of a claim of interest through conveyances subsequent to the contract; the contention of plaintiff being that such conveyances were made with knowledge of the contract.

Under the terms of the contract, the deal was to be consummated within 30 days. Within that period, according to plaintiff's evidence, he sent representatives to Crawford for the purpose of tendering to him a deed, which had been executed by the plaintiff and a Mr. Buckman, who was jointly interested with plaintiff in the property. According to these witnesses, they informed Crawford that they were "ready to make settlement"; but Crawford replied that he did not intend to settle, because he would be paying Wardman a commission on property which he owned and was selling. Thereupon Crawford was assured that Robb and Buckman, and not Wardman, owned the property; but Crawford insisted that he did not intend to settle. Crawford then was asked if he would waive tender of the deed, and replied, "Yes; I waive anything." Later Crawford said he "waived everything."

Counsel for the plaintiff offered evidence tending to prove that plaintiff was authorized by Buckman to sign the contract here involved; the purpose of the offer, as stated by counsel, being to show "that Buckman is as much bound by this contract as Robb is in equity, and therefore, if it ever came to the question of enforcing it against Buckman, it could be enforced against him as much as against Robb." To this offer objection was made by defendant and sustained, "because of the fact," as stated by the court, "that the plaintiff did make a tender of a deed to the property, signed by both."

It further appeared that there was a second trust on plaintiff's property, which, under the terms of the contract, it was necessary to have released before consummation of the deal. Plaintiff testified that, at all times after the signing of the contract, he was ready, willing, and able to perform his part of it. The witness then was questioned concerning the second trust, and replied that "we [they] were arranging to release." On motion of the defendants, this answer, so far as it related to the arrangement, was stricken out.

At the close of plaintiff's evidence counsel for defendants moved for the dismissal of the bill, but upon what ground the record does not disclose. Thereupon the learned trial justice observed: "There is another question, it occurs to me, in the case, too. The plaintiff offered himself as ready and willing to perform. How was it shown that he was ready and willing? And he is not

ready and willing now, because he has to release of that second trust, and it is not shown that he can get it." Counsel for the plaintiff insisted that his client was ready, willing, and able to have the second trust released, and finally, after further discussion, asked for an hour "in which to produce the release referred to in this deed, the second trust notes, and all of the papers that are necessary for Mr. Robb to produce." This request was refused, and the bill dismissed.

[1, 2] Whether specific performance will be decreed in this class of cases is a question addressed to the sound discretion of the court. That discretion, however, is not arbitrary or capricious, but controlled by the established doctrines and settled principles of equity. "No positive rule can be laid down by which the action of the court can be determined in all cases. In general, it may be said that the specific relief will be granted when it is apparent, from a view of all the circumstances of a particular case, that it will subserve the ends of justice; and that it will be withheld when, from a like view, it appears that it will produce hardship or injustice to either of the parties. It is not sufficient, as shown by the cases cited, to call forth the equitable interposition of the court, that the legal obligation under the contract to do the specific thing desired may be perfect. It must also appear that the specific enforcement will work no hardship or injustice, for, if that result would follow, the court will leave the parties to their remedies at law, unless the granting of the specific relief can be accompanied with conditions which will obviate that result. If that result can be thus obviated, a specific performance will generally in such cases be decreed conditionally." Willard v. Tayloe, 8 Wall. (75 U. S.) 557, 567 (19 L. Ed. 501).

In that case, which originated in the Supreme Court of the District of Columbia, the decree was for specific performance of a contract for the sale of real property, although the plaintiff, under a mistaken view of the contract, had tendered notes of the United States, instead of gold. The court found that the tender was made in good faith, and that, after it was rejected, plaintiff was prevented by the absence of the defendant from tendering the gold, which the court found was called for by the contract. On this branch of the case the court said: "The kind of currency which the complainant offered is only important in considering the good faith of his conduct. A party does not forfeit his rights to the interposition of a court of equity to enforce a specific performance of a contract, if he seasonably and in good faith offers to comply, and continues ready to comply, with its stipulations on his part, although he may err in estimating the extent of his obligation."

[3] The contract before us is free from ambiguity, there is no apparent inequality or unfairness in its terms, and the evidence discloses no collateral circumstances which would work hardship or injustice to either of the parties, should specific performance be decreed. But the defendant now insists that there is such a lack of mutuality of remedy that specific performance ought not to be enforced. The basis for this contention is that Robb and Buckman were joint owners of the property which Robb agreed to convey, and hence that it was within Buckman's power to withhold his consent to the exchange of the property; in other words, that at the date of the contract specific performance of the contract could not have been enforced by the defendant against Robb.

There are two answers to this contention. The first is that within 30 days Robb caused to be tendered to the defendant the deed called for by the contract, this deed having been properly executed by Robb and Buckman, the joint owners. Under the terms of the contract, the Wardman Construction Company was made the agent for all the parties, and was to receive the usual brokerage commission. When tender of the deed was made to him, the defendant not only failed to suggest any lack of mutuality, but definitely assigned, as his reason for refusing to perform the contract, his belief that a third party (Mr. Wardman) was the real owner, and declared that he, the defendant, was "not going to pay Wardman a commission, when he makes a deal on his own property." Having thus placed his refusal to perform the contract upon that ground, the defendant waived the contentions he now advances. Ohio & M. R. Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693; Gibson v. Brown, 214 Ill. 330, 341, 73 N. E. 578; Marshall v. Keach, 227 Ill. 35, 47, 81 N. E. 29, 118 Am. St. Rep. 247.

[4] The other answer to the contention of defendant is that no such lack of mutuality of remedy existed. The plaintiff offered to prove that he was authorized by the joint owner of the property to sign the contract. If he was so authorized, there was mutuality at the time the contract was made. In Lenman v. Jones, 33 App. D. C. 7, this court ruled that an agent may enter into a contract for the purchase of real estate for an undisclosed principal, who may enforce specific

performance of the contract against the vendor. That decision was affirmed by the Supreme Court in 222 U. S. 51, 32 S. Ct. 18, 56 L. Ed. 89.

[5] But, even if it be assumed that there was a lack of mutuality when the contract was executed, this element was supplied on the part of the plaintiff during the life of the contract and prior to the filing of the suit. "The better opinion is that it is not essential that the mutuality of remedy shall exist at the inception of the contract, and that, where the contract was originally lacking in mutuality, this element may be supplied by voluntary performance on the part of the party seeking specific performance." 25 R. C. L. 234; Hepburn v. Auld, 5 Cranch (9 U. S.) 262, 3 L. Ed. 96; Woodruff v. Woodruff, 44 N. J. Eq. 349, 16 A. 4, 1 L. R. A. 380; Mutual L. Ins. Co. v. Stephens, 214 N. Y. 488, 108 N. E. 856, L. R. A. 1917C, 809; Dresel v. Jordan, 104 Mass. 407; Md. Construction Co. v. Kuper, 90 Md. 529, 45 A. 197.

[6] The contention that plaintiff should have perfected the release of the second trust prior to the trial is likewise unsound. A tender having been expressly waived, and plaintiff in his bill having tendered himself "ready, willing, and able fully to comply with and carry out" the contract, the plaintiff should be allowed, before final decree, to clear away this incumbrance. Hepburn v. Dunlop, 1 Wheat. (14 U. S.) 179, 4 L. Ed. 65; Boone v. Mo. Iron Co., 17 How. (58 U. S.) 340, 15 L. Ed. 171; Cheney v. Libby, 134 U. S. 68, 10 S. Ct. 498, 33 L. Ed. 818; Ky. Distilleries & Warehouse v. Blanton (C. C. A.) 149 F. 31; Md. Construction Co. v. Kuper, 90 Md. 529, 45 A. 197. In the case last cited the court observed that, if the result were otherwise, "an owner of land who has incumbrances upon it might pay them off for the purpose of giving the purchaser a clear title, and then not be able to enforce the contract of purchase, or he might be subjected to heavy costs in order to have his title cleared, and then not be able to require the purchaser to perform his part of the contract." The court further observed that "the great weight of authority is that he is only required to be able to convey it by the time the decree is entered, if time is not of the essence of the contract, and he acts in good faith."

[7] Counsel for the defendants place special emphasis upon two decisions by this court, in Roller v. Weigle, 49 App. D. C. 102, 261 F. 250, and Crowley v. Crowley, 56 App. D. C. 340, 13 F.(2d) 311. The first of these cases involved a contract for personal services by one of the parties, and, as it is settled law that no one can be compelled by a court of equity to serve another against his will, it is clearly distinguishable from the present case. In the Crowley Case there was a delay by plaintiff of nearly two years in perfecting his title; conditions meanwhile becoming so changed as to make specific performance inequitable. The observations of the court in that case must be considered with reference to the particular facts, and when so considered, are not inconsistent with the views expressed here.

On the record before us, therefore, no reason appears why specific performance of this contract should not be decreed. Accordingly the decree is reversed, with costs, and the cause remanded for further proceedings.

Reversed and remanded.