Franklin County Building & Loan Association, Defendant in Error, v. D. W. Blood et al., Plaintiffs in Error.

Opinion filed July 26, 1929.

D. F. Moore, for plaintiffs in error.

Moses Pulverman and Frank E. Trobaugh, for defendant in error; Tilman B. Cantrell, of counsel.

Mr. Justice Wolfe delivered the opinion of the court.

The Franklin County Building & Loan Association filed a bill to foreclose a mortgage, to the May term, A. D. 1927, of the circuit court of Franklin county. The amended bill alleges that the complainant was a building and loan association organized under the laws of 1879 and amendments thereto. The bill further alleges that on the 12th day of November, A. D. 1921, D. W. Blood became a member of said association and subscribed for twelve shares of the capital stock; that certificates of stock were issued to him for said shares, that on the same day he became indebted to complainant in the sum of $1,200 for money loaned to him, and to secure the same pledged his stock and executed the note and mortgage involved in this suit. The bill further avers that the by-laws of the complainant provide that monthly instalments be paid on stock with premium and interest on each share; that neglect to pay said instalments when due subjected the defendant to pay a fine on each share of stock, and neglect to pay such instalments for six months subjected the stock to forfeiture by resolution of complainant's board of directors.

The bill further alleges that the complainant is the legal and equitable holder and owner of the note and mortgage and entitled to all the benefits of the same; that it is expressly stipulated in said mortgage that in case default should be made in the payment of said obligations according to the tenor and effect of said mortgage, or for the nonpayment of taxes, etc., the whole of such amount should become due and the complainant upon the resolution of its board of directors might foreclose said mortgage.

The bill further alleges that for a consideration of $50 the said D. W. Blood conveyed the said premises to the defendant, T. I. Galloway, but that Galloway did not assume or agree to pay said mortgage; that default has been made in the payment of the instalments, as provided in said writing, for more than six months and default has been made in payment of taxes and insurance; that the complainant, by a resolution of its board of directors duly adopted, has elected to forfeit the stock and mature the debt and bring this suit to foreclose the mortgage.

The defendants D. W. Blood and Grace C. Blood were defaulted. The defendants T. I. Galloway and Jennie Galloway filed two pleas and an answer to the bill. The first plea avers that the complainant at and before the commencement of the suit and since that time has not been either an actual or artificial person and at that time had no legal entity; that the certificate of complete organization of said association was issued May 24, 1917, and was not filed for record in the office of the circuit clerk and recorder until the 21st day of December, 1921; that at the time of the organization of said association the City of Benton, where said association was located, was a city of more than 5,000 inhabitants and only 200 shares of the capital stock was subscribed for, before the said certificate was issued; that said association did not organize and proceed to do business until after the statute of 1879 was repealed.

The second plea averred that on account of the facts as stated in plea No. 1, the Building & Loan Association was not a legal entity and had no authority to become the mortgagee or payee in the note and mortgage.

The answer filed denied in substance all of the material allegations of the bill and demanded strict proof of the same; denied that the complainant was the legal or equitable owner of the note or mortgage or entitled

to any of the benefits of same. The answer avers that the loan is usurious and is not made in compliance with the statute of the State of Illinois, nor in compliance with the by-laws of the complainant.

To these pleas and answer the complainant filed a replication. The cause was heard in open court before the chancellor who found that the allegations in the amended bill were true as therein stated and the equities therein were with the complainant, and found that the amount due from defendants to the complainant was $1,372.25, including attorneys' fees, costs, etc., and ordered the property sold to satisfy this decree. From this decree the defendants, T. I. Galloway and Jennie Galloway, bring the case to this court for review.

It is first contended that the complainant Building & Loan Association is not a legal entity. The gist of their argument and the substance of the two special pleas, as well as the facts set up in the answer, is that because of the fact that the charter of the complainant association was isued May 24, 1917, but not recorded until December 21, 1921, thereby the charter elapsed and became null and void and that the acts of the corporation thereunder were and are a nullity; that it is not and never was a legal entity to which a note and mortgage could be made, or in which the right of action thereunder became vested. It is also urged by plaintiffs in error that the certificate under which the association was organized was defective in that only 200 shares of the capital stock were subscribed when the statute required that 500 shares should be subscribed. The plaintiffs in error rely upon the cases of *People v. Mackey,* 255 Ill. 144, and *Africani Purchase & Loan Ass'n v. Carroll,* 267 Ill. 380, as sustaining the contention that the Franklin County Building & Loan Association's failure to file its certificate of incorporation within two years from its date was fatal to the legal

existence of the corporation and therefore any acts done by the supposed corporation would be a nullity. In a later case of *Hall v. Woods*, 325 Ill. 114, the former cases are overruled and it expressly holds that the failure of a corporation to file its final certificate of organization within two years after its date was not subject to collateral attack in a suit between a corporation and individual litigant, and cites *Bushnell v. Consolidated Ice Machine Co.*, 138 Ill. 67; *Marshall v. Keach*, 227 Ill. 35; and *Inter-Ocean Newspaper Co. v. Robertson*, 296 Ill. 92. It is our opinion that the attempt of the plaintiffs in error in this case, to raise this question, is a collateral attack, and cannot be sustained.

It is alleged in the pleas of the plaintiffs in error that the City of Benton in 1917 had a population of more than 5,000 inhabitants, therefore there must be at least 500 shares of stock subscribed before the Building & Loan Association could function properly; that the evidence shows that there were only 200 shares actually subscribed and, therefore, the charter of the Building & Loan Association was void *ab initio*.

The only evidence offered to support this plea was a certificate of the Secretary of State which the Department of Commerce had published to the effect that the population of the City of Benton according to the census of 1920 was 7,201. The certificate shows on its face that there had been no official census of 1920 which had been filed in the Secretary of State's office. The plaintiffs in error reason that because no cities in southern Illinois during the time from 1910 to 1920 made any extraordinary gains in population that they were justified in assuming that because the population of the City of Benton in 1920 was 7,201 that, therefore, they have established the fact that in 1917 the population exceeded 5,000. The burden of proof was on the plaintiffs in error to establish the population of the City of Benton in 1917, and we think from the evidence

in this case that they failed to establish the fact that the population was more than 5,000 in 1917.

The statute, Cahill's St. ch. 32, ¶ 378, provides: "That whenever five hundred shares or more of the capital stock shall be subscribed in cities, towns or villages of fewer than five thousand inhabitants; and one thousand shares or more in cities, towns or villages of five thousand inhabitants or more, the commissioners shall convene a meeting of the subscribers," etc. The burden of proof being upon the plaintiffs in error to establish the population of the City of Benton at the time of the organization of this company, and they having failed to show that it was more than 5,000, we are of the opinion that the court properly ruled that the subscribing of the 200 shares of capital stock was a compliance with the statute. It was recognized as being so by the Auditor and Attorney General of the State, who approved the report of the commissioners and issued a certificate of the organization. This question also arises on a collateral attack on the organization and legal existence of this association and cannot be made in this character of suit. *Hall v. Woods, supra.*

It is also contended by the plaintiffs in error that the act of the legislature in regard to building and loan associations (the act of 1879) was repealed by the act of 1919, Cahill's St. ch. 32, ¶ 375 *et seq.,* and that the defendant in error did not reorganize under the law of 1919, and, therefore, if the association had been legally organized under the former act, it ceased to be a corporation and a legal entity. We cannot agree with this contention as we think the statute does not require that this be done.

Objection is made to the introduction of practically all of the evidence in the case. Without passing upon each of the separate objections, we are of the opinion there is no reversible error in the admission of the

oral evidence, and the exhibits were properly admitted. The evidence shows that Mr. Harry Stotler had been president of this Building & Loan Association since it was organized; that since the year 1918 it has had a president and other officers of the ordinary building and loan association and has a board of directors and stockholders; that it had maintained a place of business in Benton, Illinois, had made loans, and sold stock; that it had made its annual reports to the State Auditor which had been approved; that at all times since its organization and commencement of business it had functioned as a building and loan association. The evidence further shows that at the time of the hearing of this suit that there were about 400 loans on real estate. This evidence is in no way contradicted.

The case of *Marshall v. Keach,* 227 Ill. 35, is a case very similar to this case at bar. The court in the *Marshall* case says: "This court has held that to create a *de facto* corporation there must be a law under which said corporation may be created, together with user under the law. . . . We have also held that where there was an honest attempt of the corporators to organize a corporation under the laws of the State, and all the necessary steps had been taken except that the final certificate had not been recorded by the recorder of deeds, and that thereafter the necessary officers had been elected, who had proceeded to the transaction of business as a corporate body, these facts would establish a corporation *de facto.* . . . A corporation is a *de facto* one where the law authorizes such corporation and where the company had made an effort to organize under that law and is transacting business in the corporate name."

The case further holds that: "A *de facto* corporation, as long as it exists, is a reality. It has a substantial legal existence. . . . This court has stated that it is the settled law that neither the eligibility of the

directors of a *de facto* corporation nor the rightfulness of its existence could be inquired into collaterally. . . . It has been held by this court that proof of the existence of a corporation *de facto* is sufficient on a plea of *nul tiel* corporation. : . . The introduction of the charter of a corporation, with the proof of the exercise under it of the franchises and powers thereby granted, is sufficient to establish the existence of a corporation *de facto.*'' In this case there was an effort made to comply with the statute. It proceeded to organize and do business. The only thing that was lacking was the filing of the certificate with the recorder within two years. Without regard to whether the complainant corporation was a *de jure* corporation or not, we are of the opinion that the evidence clearly establishes the fact that this Building & Loan Association was a *de facto* corporation, and that it has a legal existence and is not open to a collateral attack.

It is also contended by plaintiffs in error that the evidence does not establish the fact that the complainant was the owner of the note and mortgage sued on at the commencement of this suit. We are of the opinion that the chancellor properly found that the defendant in error was the owner of the instrument sued on at the time of the commencement of the suit. The reasons for this opinion we do not deem it necessary to repeat as we think our reason for holding that the Building & Loan Association was a legal entity disposes of the questions as raised in this assignment of error; and further that the evidence is sufficient to establish that fact.

It is next contended that the chancellor erred in not allowing the defense of usury. T. I. Galloway, one of the plaintiffs in error, admits that he paid only $50 for this property. The deed from the Bloods to Galloway was admitted in evidence, and on its face it shows that Galloway knew there was a mortgage on said

premises from the Bloods to the Building & Loan Association, and it is stated in said deed that Galloway did *not* assume nor agree to pay the mortgage. The Bloods testified that the deed had been changed and the word "not" was not in the deed at the time they signed it, but had been placed in there after it had been delivered to Galloway. This, we do not deem important as the evidence clearly establishes the fact that Galloway had knowledge of the mortgage on these premises at the time he accepted the deed.

Where property that is subject to a mortgage is conveyed, it need not be expressly stated in the deed that the mortgage deed is a part of the consideration, if it can be reasonably inferred that the incumbrance is a part of the consideration for the purchase price. Whether it is so agreed in express terms is not material. The legal effect is the same. Galloway purchased this property subject to the incumbrance with full knowledge thereof, and it in no way concerns him as to whether the contract was tainted with usury as between Blood and the Building & Loan Association. *Essley v. Sloan,* 116 Ill. 391; *Hibernian Banking Ass'n v. Davis,* 295 Ill. 537; *Free Home Building, Loan & Homestead Ass'n v. Edwards,* 223 Ill. 126, 132.

It is the contention of the plaintiffs in error that the defense of usury is sustained by the evidence for the reason that the by-laws of the complainant at the time the loan was made provided for a premium of 4 per cent, and after the loan was made, without the consent of the Bloods, or the defendant Galloway, the premium was raised from 4 per cent to 6 per cent. The evidence does not sustain this contention, but shows that this was done prior to the time of making the loan in question.

Plaintiffs in error admit that it is legal for the Building & Loan Association to charge a premium for their loans but insist the premium must be a lump sum and

cannot be made in monthly payments. They cite no Illinois authorities to sustain this contention. In the case of *Home Building & Loan Ass'n v. McKay,* 217 Ill. 557, the note secured in the mortgage bore interest at the rate of 7 per cent per annum but a premium in addition thereto was contracted for to be paid monthly and the premium and interest exceeded the legal rate of interest. The court held in that case that if the association had complied with the provisions of the statute controlling the making of loans by such associations they could legally contract for greater compensation by way of interest and premium for the use of their money than the legal rate fixed by the general interest laws of the State, without being guilty of usury. The chancellor properly found that the defense of usury had not been established.

On the trial of the case the defendant in error introduced in evidence the statutory validating act of 1925, Cahill's St. ch. 32, ¶¶ 420 (1), 420 (2), also the validating acts of 1927, Cahill's St. ch. 32, ¶¶ 420 (5)–420 (11), purporting to validate acts of building and loan associations such as the defendant in error. Plaintiffs in error concede the validity of these statutes but claim they can have no application to this case; that they are retroactive and that the defendant Galloway has vested rights that the legislature by these curative acts could not take away from him. The only right that Galloway has in this land or subject matter of the suit is that he paid $50 to the Bloods for the property that is indisputably worth between $1,100 and $1,200. It is the contention that this is such a vested right that has intervened between the making and delivery of this mortgage and the final hearing of the case that the legislature could not divest him of this vested right. The only case cited by the plaintiffs in error in sustaining this contention is the case of *Steger v. Traveling Men's Building & Loan Ass'n,* 208 Ill. 236. In that

case the mortgage in question had been acknowledged before an officer of the building and loan association; the courts held that this was not a valid acknowledgment and the note and mortgage not a valid lien upon the properties and could not be enforced in a court of equity. The legislature passed a statute in 1903 legalizing such mortgages so taken. In the *Steger* case between the time of the giving of the mortgage and the time the validating act was passed the owners of the property had given another mortgage on the same; a judgment creditor also had a lien on the property for his debt. The court held that inasmuch as innocent third parties had a lien on the premises, that as to them the validating act had no effect; they had a vested right in said property of which the validating act could not deprive them. The court held that as between the mortgagor and the building and loan association or an assignee of the property that the validating act would not impair their contract and make it unenforceable.

It is also contended by plaintiffs in error the validating acts of 1927 were passed to take effect after their suit was commenced and therefore they cannot be held to validate this suit because of the vested rights of the plaintiffs in error. In the case of *People v. Militzer,* 272 Ill. 387, in the election of April, 1914, to organize a school district, the women voted at such election and later the law was held unconstitutional by the Supreme Court. In April, 1915, the legislature passed a validating act legalizing such elections and abating all pending suits. The act was held to apply to pending litigation.

In the case of *People v. Peltier,* 275 Ill. 217, another high school case when the women voted, the court, discussing the validating act of 1915, say: "Appellants had no vested rights in the matter, and this proceeding was instituted with the full knowledge that it was in the power of the legislature by a curative act to ratify and render legal and binding the election held.

The act was approved and became effective before the final determination of the cause.'' *Vance v. Rankin,* 194 Ill. 625; *People v. Madison,* 280 Ill. 96.

We are of the opinion that all of these curative acts were properly admitted in evidence and any defects in the organization, of filing of the charter or of the over-issuing of stock that might have existed, were properly legalized by these curative acts. It is settled in this State by numerous decisions that the legislature can by a validating act legalize any act done or attempted to be done by a corporation where the legislature may have authorized such an act originally. *People v. Millard,* 307 Ill. 556.

It is the contention of the Building & Loan Association that the Galloways are estopped to deny the validity of the note and mortgage and the proper organization of the association. The defendants filed pleas challenging the legality and existence of this Building & Loan Association. The complainant filed a replication to those pleas and by doing so admitted this as a sufficient defense if the averments of the pleas were established. It cannot now be heard to say that the defendants are estopped from making this defense. An estoppel to be available must be pleaded.

We find no reversible error in this case, and the decree of the circuit court of Franklin county is hereby affirmed.

*Affirmed.*