Concordia Building and Loan Association, Appellant,
v. Erik Andreen et al., Appellees.

Gen. No. 39,171.

Heard in the third division of this court for the first district at the October term, 1936. Opinion filed June 30, 1937.

RATHJE, HINCKLEY, BARNARD, KULP & TUCKER, of Chicago, for appellant; FRANCIS E. HINCKLEY and JOSEPH J. SULLIVAN, JR., of Chicago, of counsel.

HARRY A. BIOSSAT and NELS H. OLSON, both of Chicago, for appellees.

MR. JUSTICE HALL delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Cook county, dismissing a complaint in equity, filed by the Concordia Building and Loan Association, to foreclose a mortgage.

The complaint, as amended, recites in substance, that the plaintiff is and was organized as a building loan and homestead association; that on May 22, 1925, Elmer H. Thilmont and Robert S. Kenney were members of the association, and made application to the association for a loan of $3,500; that prior thereto, 35 shares of the 145th series of the capital stock of the

association had been issued to them in accordance with the by-laws of the association; that on May 22, 1925, a loan was made to the persons named of $3,500, and to secure the payment, these persons made, executed and delivered to the loan association their bond dated May 25, 1925, in the sum of $7,000; that to secure the payment of the indebtedness, the persons named pledged with plaintiff the 35 shares of capital stock so issued to them, and as further security for the loan, together with their wives, on May 22, 1925, made, executed and delivered a mortgage, wherein and whereby they conveyed to the association certain real estate situated in Cook county; that by the bond, it was provided that if at any time default should be made in the payment of any sums due on the 35 shares of capital stock, or in the payment of interest, or of any amount to become due the association on fines under plaintiff's by-laws, then the shares of stock should be forfeited to the plaintiff under the terms of the bond. It is further alleged that the shares of stock were transferred to plaintiff as collateral and further security for the loan. There are various other allegations in the complaint as to penalties provided by the plaintiff's by-laws, which might result from the mortgagor's defaults in payment to the association of certain amounts provided in the agreement to be paid. It is alleged that on June 23, 1925, Kenney and Thilmont, together with their wives, agreed to sell the premises to Erik Andreen and Bertha Andreen, his wife, and that the parties entered into a written agreement wherein and whereby Thilmont and his wife, as a part of the purchase price to be paid to Kenney and Thilmont for the property in question, assumed and agreed to pay and to become personally liable for the payment of the unpaid balance due on the mortgage to plaintiff, together with certain charges and costs. The complaint prays for an accounting from the defendants on the foreclosure of the mortgage, and for a sale of the premises in satisfaction

of the amount found to be due, and for a deficiency decree against the defendants, in case the mortgaged premises fails to sell for a sufficient amount to pay the debt. To the complaint, defendants filed a counterclaim, in which they allege that on June 23, 1925, the mortgagors in the mortgage referred to in the complaint, entered into an agreement with Erik Andreen and Bertha Andreen, defendants, by which the mortgagors agreed to convey the property involved to the Andreens for a consideration of $6,300. In this agreement, the mortgagors are referred to as party of the first part, and the defendants, as party of the second part. The agreement, as to the payments to be made by the defendants to the mortgagors, is as follows:

"And the said party of the second part for and in consideration of the foregoing agreement on the part of the said party of the first part covenant and agree to pay to the said party of the first part at the office of Chi. City Bk. & T. Co. Chicago, Illinois, or where directed, as the purchase price of the said premises, the principal sum of Six Thousand Three Hundred Dollars ($6,300.00) with interest thereon as hereinafter stated, in the manner following: Eight Hundred Dollars ($800.00) in hand paid the receipt of which is hereby acknowledged:

"$2,791.25, being present, paid balance by first mortgage to the Concordia Building Loan & Homestead Association payable in monthly installments of Thirty Five ($35.00) Dollars, including interest at the rate of six (6%) per cent per annum, payable monthly, which purchasers assume and agree to pay.

"$2,708.75 remaining balance payable in monthly installments of forty ($40.00) dollars or more. Said sum to include interest at the rate of six (6%) per cent per annum, payable monthly on said sum remaining from time to time unpaid. Both monthly payments due on or before the 14th day of each month beginning July 4, 1925.

"Said monthly payments shall be continued until Three Thousand Five Hundred Eight & 75/100 ($3,508.75) (including initial payment) Dollars has been paid on the principal sum of said purchase price, not including 1st mortgage payments at which time warranty deed will be given subject to first mortgage balance and taxes and assessments as hereinafter mentioned.

"And the said party of the second part further agree to pay all taxes and assessments that may be legally levied or imposed on the said premises after the year 1924 and all unpaid installments of special assessments due after the year 1925 and all unpaid special assessments levied for improvements not yet to be made, and further agree as additional security to keep all buildings on aforesaid premises insured in such company or companies as the said party of the first part may direct for at least the sum of $4500.00 Dollars. But in case the said party of the second part fail to pay any or all such taxes and assessments upon said premises, or any part thereof, whenever and as soon as the same shall become due and payable, and the said party of the first part shall pay from time to time, or at any time, any or all such taxes and assessments, or cause the same to be paid, the amount of any and all such payments so made by the said party of the first part, shall thereupon become an additional consideration for the premises herein agreed to be conveyed, and shall immediately become due and payable from the said party of the second part to the said party of the first part.

"Said party of the second part further agree that in case they shall not make the payments on the days they are respectively due and payable, they will pay interest on all payments remaining unpaid and past due on this contract and on all taxes, assessments, and insurance premiums paid by the said party of the first part at the rate of seven per cent per annum.

"For and in consideration of said purchase price seller agrees to complete the following repairs on said property within four months from date hereof. Construct a new back porch of new lumber, just like present back porch. Repair front porch and place same in good condition. Paint entire bldg. one coat and all new work two coats of color acceptable to owner.

"It is further stipulated and agreed by and between the parties hereto that in case of the failure of the said party of the second part to make either of the payments or perform the covenants and agreements hereby made and entered into on their part this contract shall after thirty days, at the option of the said party of the first part, or those at the time holding the legal title to the said premises, be forfeited and determined and the party of the second part shall forfeit all payments made by them, on this contract and all payments made thereon shall be retained by the said party of the first part in full consideration and liquidation of all damages by them sustained and the said party of the first part shall then or at any time have the right to re-enter and take possession of the said premises with or without process of law. . . .

"It is mutually agreed by and between the parties hereto that all the agreements herein contained shall extend to and be obligatory upon the heirs, administrators, executors and assigns of the respective parties, and that the time of payment shall be the essence of this contract and of all the conditions thereof.

"In Witness Whereof, the parties to these presents have hereunto set their hands and seals this day and year first above written.

"Robert S. Kenney   (Seal)
Sara P. Kenney   (Seal)
Elmer H. Thilmont   (Seal)
Mary M. Thilmont   (Seal)

"Erik Andreen
Bertha Andreen"

Plaintiff's theory is that the grantees receiving a conveyance of real estate from mortgagors, subject to an existing recorded mortgage which they assumed and agreed to pay, are estopped to plead usury, even though they agreed to pay an amount less than the amount actually due thereon, especially where they had ample opportunity to ascertain the unpaid balance due on the mortgage; that when an Illinois Building and Loan Association has, by its by-laws, dispensed with the offering of its money for bids in open meeting, and in lieu thereof has provided for the loan of its money at a fixed rate of interest, and a fixed premium payable in advance, the premium is based and the interest computed not on the net proceeds of the loan actually received by the borrower (i. e., the principal amount of the loan after deducting the premium), but upon the principal amount of the loan, even though the premium is paid·by the borrower out of the proceeds of the loan instead of being paid with separate funds. Also, that defendants cannot urge usury as a defense, when by their agreement, they assumed and agreed to pay the amount of the mortgage, as shown by the by-laws of plaintiff. Defendants' theory is that when a premium and interest may properly be charged by a Building and Loan Association upon a loan to one of its members, the premium and interest should be based upon the net proceeds of the loan available to the individual borrowers (i. e., the principal amount of the loan less the premium) even though the premium is paid to or deducted by the association out of the proceeds of the principal amount of the loan due to the borrowers' liability to otherwise pay the same. In other words, it is claimed by defendants that by its by-laws, plaintiff could only charge 20 per cent of the loan made for interest and premium, and that the 20 per cent should be computed on the basis of the actual loan, and that the amount of interest claimed is usurious.

The cause was referred to a master, and on July 16, 1936, the master filed his report, in which he found that the complainant was entitled to the relief prayed in the complaint. Objections and exceptions were filed to the report, and upon a hearing, the court, as stated, dismissed the complaint for want of equity. After hearing evidence, the master concluded that the defendants had failed to establish the defense of usury, and that such defense was not available to them, and that the material allegations contained in the complaint, as amended, were true, and were sustained by the evidence. There seems to be no question as to the facts. The only question is as to the conclusion that should be reached therefrom. Therefore, we will act on the presumption that the master's finding of facts is correct. These findings are to the effect that:

"On May 22, 1925, Robert S. Kenney, Sara P. Kenney, his wife, Elmer H. Thilmont and Mary M. Thilmont, his wife, hereinafter referred to as 'mortgagors', were members of said plaintiff association, and that 35 shares of the 145th series of the capital stock in said association had been issued to them in accordance with the by-laws of said association, and that on May 22, 1935, the plaintiff granted a loan to said mortgagors in the sum of $3,500.00; that thereupon the said mortgagors, to secure the payments of the said amount so loaned, made, executed and delivered to plaintiff their certain bond dated May 22, 1925, and then and thereby promised to repay to plaintiff the penal sum of $7,000.00, according to the tenor and effect of said bond, and

"That to secure the payment of said indebtedness the said mortgagors then and there pledged with plaintiff the said 35 shares of capital stock, and for further security, on May 22, 1925, made, executed and delivered their certain mortgage, wherein and whereby they did convey and warrant to the plaintiff certain

premises situated in the County of Cook and State of Illinois; and

"That said bond provides that if at any time default should be made in the payment of the principal sum or interest thereon, or of any amount to become due on said shares of stock or fines under plaintiff's by-laws, which said shares of stock were with said bond transferred to plaintiff, as collateral security, and if such default should continue for a period of six months, then said shares of stock may be declared forfeited to plaintiff in accordance with the terms of said bond; and

"That under and by virtue of plaintiff's by-laws, it is provided that every borrowing member who shall neglect to pay his or her monthly installments at the time they may become due shall pay to plaintiff a fine of five cents per share for each past due installment, and every borrowing member who shall neglect to pay the interest on his or her loan when the same shall become due, shall also pay to plaintiff the sum of five cents per share on each share of stock upon which he or she may have obtained a loan for each such delinquency;

"That the monthly installments of principal and of interest due in accordance with the terms of said bond and mortgage were the sums of $17.50 each, respectively, and that said mortgagors at the time of securing the loan hereinbefore mentioned, paid unto plaintiff as a premium therefor under and in accordance with the by-laws of plaintiff the sum of $700.00; and

"That on and prior to April 15, 1935, said mortgagors defaulted in the payment of the installments of principal and of interest that became due in accordance with the provisions of said bond and mortgage, and that neither the mortgagors nor anyone in their behalf, have paid said interest or principal or any part thereof, and that said default has been continued for a period

of more than six months prior to October 15, 1935, and that on October 15, 1935, said default amounted to a sum in excess of a sum equal to six contractual monthly payments due as aforesaid; and that on to-wit: the 15th day of October, 1935, there were fines which accrued to plaintiff under the terms of said bond, mortgage and by-laws in the sum of $10.50; that past due accrued interest on said bond and mortgage amounted to $105.58; that there was also due plaintiff for money advanced for insurance the sum of $5.25; and that after allowing to said mortgagors all just credits to which they were entitled, including the sum of $2,135.00 for installments paid on said bond and the sum of $297.34 as profits allowed by the plaintiff on said shares of stock, there was due and owing to the plaintiff on October 15, 1935, the sum of $1,188.99 with interest thereon from and after said date at the rate of 5% per annum; and

"That on October 15, 1935, the Board of Directors of plaintiff association at its regular meeting ordered that said 35 shares of the 145th series of the capital stock of plaintiff association issued to said mortgagors be forfeited unto plaintiff by reason of the defaults hereinbefore mentioned and that proceedings be instituted upon and against the securities of said loan according to law; and

"That the plaintiff was at the time of the filing of the complaint herein and is now the legal holder and owner of said bond and mortgage, and that by reason of said defaults, which defaults continued for a period of more than six months prior to October 15, 1935, amounted to a sum in excess of a sum equal to six contractual monthly payments due as aforesaid, and pursuant to the terms and conditions of said bond and mortgage, and in pursuance of plaintiff's by-laws, plaintiff herein elected to and did, by the filing of its complaint herein, on November 6, 1935, exercise its option to foreclose the lien of said mortgage; and

"That subsequent to the filing of its complaint herein, the plaintiff was reimbursed in the sum of $5.25, for said sum so paid by it as and for premium on insurance policy covering the said premises, which the Master recommends be credited on account of the indebtedness hereinafter found due and owing under the said mortgage herein sought to be foreclosed; and·

"That the plaintiff, in connection with these proceedings, was compelled to engage the services of a court reporter herein; that the usual, reasonable and customary charge for the services of said court reporter is the sum of $16.00, that the usual, reasonable and customary fee for the services of plaintiff's attorneys herein is the sum of $200.00, and the Master recommends that said sums be allowed the plaintiff as an additional portion of the indebtedness secured by the said mortgage; and

"That the Master finds and states the account of the amount due the plaintiff herein as the legal holder and owner of said bond and mortgage herein sought to be foreclosed, to be as follows:

Amount due under said bond (after allowing all credits, including the withdrawal value of said shares) ......................$1,183.74

Interest thereon at 5% per annum from October 15, 1935 to May 6, 1936...................  33.05

Sub-total....................$1,216.79
Court reporter's charge........  16.00
Attorney's fees...............  200.00

Grand Total  .  $1,432.79

together with all costs and expenses of these proceedings; and

"That the defendants herein contend that the actual loan granted by the plaintiff amounted to the principal sum of $2,800.00; that the exaction of a $700.00 premium therefor amounted to a 25% charge; that said loan was unauthorized, exceeded the 20% premium allowed to be exacted by Article 13, Section 2 of the by-laws of the plaintiff and was thereby rendered usurious; said defendants further maintain that said loan is usurious in that interest at the rate of 6% was charged by the plaintiff on the sum of $3,500.00 instead of the sum of $2800.00, which was actually received by the defendants; and

"That Article 13, Section 2 of the plaintiff's by-laws in force at the time of the granting and consummation of said loan, provided as follows: 'All loans, by this association to borrowing stockholders shall be made at a premium of 20% payable in advance, and at the rate of 6% per annum, payable in equal monthly installments.' That on or about May 6, 1925, Elmer H. Thilmont and Robert S. Kenney executed and delivered to the plaintiff a certain application in writing, requesting 'a loan of $3500.00 on 35 shares of the capital stock, 145th series of said Association . . . at a premium of $700.00, payable in advance, in accordance with the by-laws of said Association . . .'; and

"That the Master finds that on June 3, 1925, pursuant to the application, plaintiff executed and delivered to Elmer Thilmont and Mary Thilmont, Robert S. Kenney and Sara P. Kenney, its check in the sum of $3500.00, representing the proceeds of said loan; that said payees thereupon endorsed said check and caused the proceeds thereof to be deposited in the Chicago City Bank and Trust Company; that thereafter the funds represented thereby were distributed for the use and benefit of said borrowers, including the payment to the plaintiff of a premium in the sum of $700.00, on or about July 3, 1925; that thereafter the payment of said pre-

mium was recorded on the first page of the pass book to said borrowers."

His conclusion is as follows:

"That the loan granted by the plaintiff herein to Robert S. Kenney, Sara P. Kenney, Elmer Thilmont and Mary M. Thilmont, was consummated in accordance with the statutes in such case made and provided, and pursuant to the provisions of the by-laws of the plaintiff association; that said loan was fully authorized; and that the defendants Erik Andreen and Bertha Andreen, his wife, grantees of said Thilmonts and Kenneys, have failed to establish the existence of usury herein or that said defense is available to said defendants."

Upon the findings and conclusion, the master recommended that a decree be entered in accordance therewith. The objections and exceptions filed by defendants were to the effect that the master was in error in finding that the loan to the Kenneys was $3,500, when, in fact, it was $2,800, and objects to the amount found to be in default. Upon a hearing before the court, the objections and exceptions were sustained, and as stated, a decree was entered, dismissing the bill for want of equity.

It seems not to be disputed that the original loan made by the association to Thilmont and Kenney was $3,500, and that they gave to the association the sum of $700 to be applied on account of premium, and that interest had been charged by the association on $3,500 from the inception of the loan, at the rate of six per cent per annum, and that this interest charged included six per cent on the $700 paid as premium. The record further indicates that Thilmont and Kenney, together with their wives, on June 3, 1925, were given a check by plaintiffs for $3,500. The by-laws of the association provide that a loan made to a borrowing stockholder "shall be made at a premium of 20%, payable in ad-

vance, and at the rate of 6% per annum, payable in equal monthly instalments.''

Chapter 32, par. 393, section 19, Cahill's Illinois Revised Statutes, 1933, provides:

''The board of directors shall hold such stated meetings not less frequently than once a month, as may be provided by the by-laws. At which meeting the money in the treasury shall be offered for loan in open meeting, and the shareholders who shall bid the highest premium for the preference or priority of loan, shall be entitled to receive a loan of one hundred dollars ($100.00) for each share of stock held by said shareholders; the said premium bid may be deducted from the loan in one amount, or may be paid in such proportionate amounts or installments, and at such times during the existence of the shares of stock borrowed upon, as may be designated by the by-laws of the respective associations; provided, that any such association may, by its by-laws, dispense with the offering of its money for bids in open meeting, and in lieu thereof loan its money at a rate of interest, or interest and premium, to be fixed by the directors, deciding the preference or priority of the right to a loan by the priority of the approved applications therefor of its shareholders.'' See also *Franklin County Bldg. & Loan Ass'n v. Blood,* 255 Ill. App. 175.

We are of the opinion that the report of the master was correct. Defendants cannot escape the manifest terms of their agreement and the terms of plaintiff's contract with the borrowers. The decree is, therefore, reversed, the cause is remanded, and the court is directed to enter a decree confirming the master's report.

*Reversed and remanded with directions.*

Denis E. Sullivan, P. J., and Hebel, J., concur.